OPINION
{¶ 1} Appellant, Laurie Cogar, appeals from a Mahoning County Common Pleas Court, Juvenile Division decision granting sole custody of her granddaughter to the child's father, appellee, Nicholas DeLucia, and terminating her companionship rights.
 {¶ 2} Appellee is the father of four-year-old Nicole, born February 12, 2001. Tiffany West is Nicole's mother. Appellant is Nicole's maternal grandmother. Tiffany did not inform appellee or appellant of her pregnancy or the child's birth.
 {¶ 3} When appellant learned that Tiffany had given birth and was going to place the baby for adoption, she sought custody of Nicole. A dependency complaint was filed and the juvenile court granted appellant interim custody of Nicole. A magistrate found that Nicole was dependent. However, it does not appear that the trial court ever ruled on the issue. This was because at that time, appellee learned of Nicole's birth and that he might be the father. He filed a motion to establish paternity on March 30, 2001. The court subsequently incorporated the dependency case into the paternity case. It later ordered that all filings were to be made under the paternity case.
 {¶ 4} Appellee took a paternity test that established he was Nicole's father. Subsequently, he filed a motion to establish custody and/or visitation with Nicole. The court granted him visitation with Nicole. This continued for several months. Appellee then sought custody of Nicole, or in the alternative, shared parenting. Tiffany also sought custody of Nicole. Before the court could rule on the motions, Tiffany, appellee, and appellant entered into a plan of shared parenting/joint custody.
 {¶ 5} The shared parenting plan referred to Nicole's parents and grandparent. It was signed by Tiffany, appellee, and appellant. The agreement provided for week-on, week-off custody of Nicole. At the time, Tiffany resided with appellant. The agreement stated that during the time that Nicole was with Tiffany and appellant, they were to be designated as joint custodians of Nicole. The court adopted this agreement.
 {¶ 6} On December 18, 2002, appellee filed a motion to dissolve the shared parenting plan and award him custody of Nicole. As a basis for his motion, appellee alleged that Tiffany had failed to care for Nicole or to participate in the shared parenting plan. He further alleged that appellant had refused to abide by the terms of the shared parenting plan. Appellee alleged that appellant was trying to take the role of mother in Nicole's life. He noted that Tiffany had moved out of appellant's home and appellant did not inform him of this change. Appellee also requested that the court appoint a guardian ad litem (GAL) for Nicole.
 {¶ 7} The matter proceeded to trial before a magistrate. Tiffany failed to appear. The magistrate heard testimony from appellant, appellee, appellant's mother, and the GAL. The magistrate found that at no time had appellee or Tiffany been found to be unsuitable. He further found that the shared parenting agreement was not a contractual relinquishment of custody by either parent. He noted that parents have a fundamental liberty interest in the care of their children over the interests of a non-parent. The magistrate determined that he was not obliged to reach the best interest of the child test because the child's best interest is presumptively with the natural parent. He further noted that while appellee was not required to demonstrate a substantial change of circumstances, he met that standard because of facts that had arisen regarding Tiffany and Nicole. The magistrate concluded that appellee was not unsuitable and was entitled to Nicole's custody and that such an award was in Nicole's best interest. The magistrate designated appellee as Nicole's residential parent and custodian. He designated Tiffany as the non-residential parent. He also determined that he would not establish a companionship order between Nicole and appellant.
 {¶ 8} Appellant filed objections to the magistrate's decision. She contended that the magistrate erred in applying the suitability test instead of the best interest test. She requested that the court overrule appellee's motion to terminate the shared parenting plan. She also requested that the court re-institute her companionship rights with Nicole.
 {¶ 9} The court held a hearing on appellant's objections. It found no error of law or fact with the magistrate's decision, affirmed the decision, and dismissed appellant's objections. Appellant subsequently requested findings of fact and conclusions of law. The court then entered judgment awarding custody to appellee. It found that appellee was a suitable parent and, therefore, should be awarded custody of his daughter. Appellant filed a timely notice of appeal on January 3, 2005.
 {¶ 10} Appellant raises one assignment of error, which states:
 {¶ 11} "THE COURT ERRED IN GRANTING SOLE CUSTODY TO THE FATHER AND TERMINATING COMPANIONSHIP RIGHTS WITH THE MATERNAL GRANDPARENT."
 {¶ 12} Appellant argues that the trial court applied the wrong test in awarding sole custody to appellee and terminating her companionship rights. She contends that the parental suitability test set out in In re Perales (1977),52 Ohio St.2d 89, 369 N.E.2d 1047, is not applicable in this case because here the court was not dealing with an original award of custody between a parent and a non-parent. Appellant points out that she was granted interim custody of Nicole and she was also part of a shared parenting agreement. Since the court was not faced with an original custody determination, appellee argues that it should have looked to R.C. 3109.04(E), which requires a change in circumstances to modify a custody award. After the court found a change in circumstances, appellant contends, it was then required to apply the best interest test.
 {¶ 13} We must determine whether the trial court erred in applying the parental suitability test in a case where a grandparent was incorporated into a shared parenting plan involving the mother, father, and grandparent and where the father seeks to terminate the shared parenting plan and receive sole custody of the child.
 {¶ 14} The present case first arose under R.C. 2151.23(A)(1), which gives the juvenile court exclusive original jurisdiction concerning any child alleged to be a dependent child. But the case was incorporated into and proceeded as a paternity case, not a dependency case. Thus, the juvenile court had jurisdiction under R.C. 2151.23(A)(2), which gives the juvenile court exclusive original jurisdiction to determine the custody of any child not a ward of another court of the state.
 {¶ 15} In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the court may not award custody to the nonparent without first making a finding of parental unsuitability. Perales, 52 Ohio St.2d at the syllabus. In other words the court must first determine by a preponderance of the evidence that: (1) the parent abandoned the child; (2) the parent contractually relinquished custody of the child; (3) the parent has become totally incapable of supporting or caring for the child; or (4) an award of custody to the parent would be detrimental to the child. Id. Parents who are deemed suitable have a paramount right to custody of their minor children. Id. at 97.
 {¶ 16} The Perales "suitability" test differs from the "best interest" test. Under the best interest test, the court looks for the best situation available to the child and places the child in that situation. In re Lowe, 7th Dist. No. 00-CO-62, 2002-Ohio-440. The suitability test, on the other hand, requires a detriment to the child be shown before the court takes him/her away from an otherwise suitable parent. Id. Under the suitability test, "[s]imply because one situation or environment is the `better' situation does not mean the other is detrimental or harmful to the child." Id.
 {¶ 17} Without giving their reasons for doing so, the magistrate and the trial court used the suitability test in granting sole custody to appellee. In the magistrate's findings of fact, he stated that at no stage in these proceedings has appellee been found to be parentally unsuitable. The magistrate further found that the shared parenting/joint custody agreement entered into by the parties was not a contractual relinquishment of custody by either parent. He then noted that parents have paramount rights and a fundamental liberty interest in the care, custody, and management of their children over the interests of a non-parent. The magistrate stated that an award of custody may not be granted to a non-parent without a finding of parental unsuitability. The magistrate determined that the court was not obliged to reach the best interest test or to find a change in circumstances. However, he stated that even if the court was to use such a test, appellee demonstrated a change in circumstances. He concluded that since appellee is not unsuitable, he was entitled to the custody of his child and that such an award was also in the best interest of the child.
 {¶ 18} The trial court echoed the magistrate's findings and conclusions, although the court did not state, as the magistrate did, that the award was also in the best interest of the child. It found that appellee's fitness as a father has never been questioned. It also found that an award of custody to appellee would not be harmful or detrimental to Nicole as to render appellee unsuitable.
 {¶ 19} In order to determine which test applies, we should examine the major cases where each test was determined to be proper.
 {¶ 20} The main case dealing with the suitability test isPerales, supra. Perales involved a custody dispute between a child's natural mother and a nonparent. Upon the child's birth, the mother feared her husband would harm the child so she placed the child in the care of Ms. Nino and signed an agreement purporting to give custody to Ms. Nino. Two years later, Ms. Nino made a motion for custody, which the juvenile court granted. The mother subsequently filed a complaint for return of the child and custody, describing the circumstances surrounding the child's placement in Ms. Nino's care and alleging that the child's return to her mother was "in the best interest" of the child. The juvenile court, applying the R.C. 3109.04 best interest test, found that the child's best interest would be served by granting custody to Ms. Nino. The mother appealed. The court of appeals found that it was error for the juvenile court to (1) use R.C.3109.04(B) as a guideline, (2) grant custody to a nonparent without a finding of parental unsuitability, and (3) give any consideration to the mother's written grant of custody to Ms. Nino. It awarded custody to the mother and Ms. Nino appealed.
 {¶ 21} The Ohio Supreme Court addressed the issue of whether the juvenile court properly awarded the child's custody to Ms. Nino without a finding that the mother was an unsuitable parent. It concluded that a parent could only be denied custody of his or her children if a preponderance of the evidence indicated abandonment, contractual relinquishment of custody, total inability to provide care or support, or that the parent is otherwise unsuitable, that is, that an award of custody would be detrimental to the child. Id. at 98. Since the juvenile court failed to determine whether the mother was unsuitable, the Court reversed the decision for the juvenile court to determine the mother's suitability as defined by the criteria it set out.
 {¶ 22} The Court further examined its Perales decision inMasitto v. Masitto (1986), 22 Ohio St.3d 63, 488 N.E.2d 857. InMasitto, a child, Stacy, was born to Christine and Louis. Christine suffered severe brain damage during child birth and subsequently required constant care. Several years later, Louis signed an agreement consenting to the appointment of Stacy's maternal grandparents as her joint guardians. He then filed for a divorce from Christine. The divorce decree did not use typical custody-awarding language, but instead referred to the guardianship status of the grandparents and established Louis's visitation rights with Stacy. Several years later, Louis filed a motion for change of custody. The trial court denied Louis's motion finding that it was in Stacy's best interest to continue to live with her grandparents. The court of appeals reversed, on the basis that, in a custody dispute between a parent and a nonparent, the trial court must first find the parent unsuitable before it can award custody to the nonparent. The grandparents appealed.
 {¶ 23} The Supreme Court framed the issue as: "whether it is contrary to law for a trial court to proceed under the `best interest of the child' test enunciated in R.C. 3109.04 when the parent requesting a change in custody has previously consented to the appointment of the child's grandparents as her guardians." Id. at 65. The Court acknowledged that the general rule regarding original custody awards in disputes between a parent and nonparent is that parents who are suitable have a paramount right to the custody of their children unless they forfeit that right. Id., citing Perales, 52 Ohio St.2d at 97. But it also stated that once an original custody award has been made, the general rule is that the award will not be modified unless necessary to serve the best interest of the child. Id.
 {¶ 24} The Court considered the agreement Louis entered into with the grandparents. It found that not only did he consent to having his child be under the grandparents' care, he also consented to the agreement to their being appointed her legal guardians, and later consented to a divorce decree that incorporated his agreement to leave his daughter in her grandparents' care. Id. at 66. The Court concluded that by consenting to the agreement and the divorce decree, Louis forfeited his natural rights to custody of his daughter, making the child's best interest the appropriate test for a change in custody. Id. The Court also noted an additional factor that it considered — the guardianship status of the child could not have existed unless the probate court found that the natural parents were unsuitable to have the custody of the child or whose interests, in the court's opinion, would be promoted thereby. Id. Thus, the Court determined that Louis relinquished his natural rights to custody. It concluded that the prior agreement was an original award of custody to a guardian, the modification of which requires satisfaction of the child's best interest. Id. at 67.
 {¶ 25} More recently, in In re Hockstok, 98 Ohio St.3d 238,781 N.E.2d 971, 2002-Ohio-7208, the Court examined whether, in a child custody case arising out of a parentage action between a parent and a nonparent, a trial court must make a parental unsuitability determination on the record before awarding legal custody of the child to the nonparent. The Hockstok case originated when the mother, Jennifer Gorslene, filed a complaint in the juvenile court to establish her child's paternity. Paternity was established and the court designated Gorslene as the child's residential parent. Soon thereafter, Gorslene's father and stepmother, the Hockstoks, filed a motion to be made parties to the action so they could assert custodial rights to the child. The court granted the Hockstoks' motion and found that it was in the child's best interest to grant temporary custody to them. Gorslene and the Hockstoks subsequently entered into an agreement whereby the Hockstoks assumed temporary custody of the child for six months to give Gorslene time to create a stable living environment for her child. When the six months expired, the parties agreed to extend the period of temporary custody for another six months. Before the expiration of the six-month period, Gorslene filed a motion to terminate the Hockstoks' temporary custody and regain custody of her child. The Hockstoks then filed a motion requesting legal custody of the child. The matter proceeded to a hearing. The court adopted the magistrate's decision applying the best interests test and granting the Hockstoks legal custody of the child. Gorslene failed to appeal this decision.
 {¶ 26} Ten months later, Gorslene filed a motion for the reallocation of parental rights. The magistrate again applied the best interest test in recommending that the Hockstoks retain custody. Gorslene objected arguing the magistrate was first required to determine whether she was a suitable parent. The trial court, in adopting the magistrate's decision, denied Gorslene's motion. Gorslene appealed.
 {¶ 27} The Court held that in a child custody case arising from a parentage action between a parent and a nonparent, the trial court must make a parental unsuitability determination on the record before awarding the child's legal custody to a nonparent. Id. at the syllabus. On appeal, the Hockstoks argued that Gorslene failed to appeal the original grant of legal custody to them thereby constructively forfeiting her right to custody, and therefore, the court did not err in applying the best interest test. The court disagreed, finding that no evidence existed that Gorslene ever agreed to give the Hockstoks legal custody of her child.
 {¶ 28} The Court also reexamined Masitto, supra. It re-emphasized that the general rule in Ohio, as codified in R.C.3109.04(B)(1) and (E)(1)(a), is that once an original custody award has been made, that award will not be modified unless necessary to serve the best interest of the child. Hockstok,
98 Ohio St.3d at ¶ 21, citing Masitto 22 Ohio St.3d at 65.
 {¶ 29} Finally, this court examined a custody dispute between a parent and a nonparent in In re Davis, 7th Dist No. 02-CA-95, 2003-Ohio-809. Davis began as a paternity action. Once paternity was established, James Price, the father, consented to the mother, Ieshia Davis, being the child's residential parent. Davis's grandmother, Phyllis Carwell, helped Davis care for the child. However, one day Davis left and never returned, leaving the child in Carwell's care. Upon learning Davis had left, Price filed a motion for custody. The court granted Carwell temporary custody pending a hearing. The juvenile court, while not expressly stating it had done so, applied the best interest test and concluded that the transfer of custody from Carwell to Price was not appropriate at the time. Price appealed arguing that the juvenile court should have granted him custody unless it found him to be unsuitable.
 {¶ 30} This court noted that at the time of the hearing, Carwell only had temporary custody of the child. Therefore, the juvenile court was faced with an original custody determination between a parent and nonparent. We then emphasized parents' fundamental right to raise their children as long as they are deemed suitable under the Perales test. We concluded that the juvenile court erred in applying the best interest test instead of the suitability test and, since the evidence demonstrated that Price was a suitable parent, reversed the lower court's judgment.
 {¶ 31} These cases all express that when a court is faced with an original custody action between a parent and a nonparent, the court must award custody to the parent unless it finds the parent to be unsuitable. However, once an original custody award has been made, the court should not modify that award unless necessary to serve the best interest of the child.
 {¶ 32} In the case at bar, the juvenile court was faced not with an original award of custody between a parent and nonparent, but a modification of an original award of custody. The shared parenting/joint custody agreement, which was adopted by the court, included appellant as a joint custodian for Nicole along with her parents. While appellee did not surrender any of his rights as a parent by entering into this agreement, as did the father in Masitto, he did agree to an original award of custody, which the court adopted. Thus, in order to modify the shared parenting/joint custody agreement, the juvenile court should have applied the best interest test instead of the suitability test.
 {¶ 33} Since the court did not apply the best interest test, its decision must be reversed and remanded. On remand, the court must apply the best interest test in ruling on appellee's motion for custody. However, another hearing is not required since the parties already presented significant evidence regarding the change in circumstances and Nicole's best interests at the previous hearing. Furthermore, after the court determines whether it is in Nicole's best interest to grant her custody to appellee or appellant, it should set out any visitation that it finds proper.
 {¶ 34} For the reasons stated above, the juvenile court's judgment is hereby reversed and remanded for further proceedings pursuant to law and consistent with this opinion.
Vukovich, J., concurs.
DeGenaro, J., concurs.