OPINION
{¶ 1} Kesalon Harris, Sr. appeals from a trial court decision finding him in contempt for failing to pay child support. In support of the appeal, Harris raises as assignments of error that:
 {¶ 2} "I. The trial court erred in determining that Mr. Harris has not proven his inability to comply by clear and convincing admissible evidence and finding him in contempt.
 {¶ 3} "II. The trial court erred in finding that Mr. Harris has not substantially complied with the court's child support order and finding him in contempt."
 {¶ 4} Upon reviewing the record and applicable law, we find the assignments of error without merit. As a result, the judgment of the trial court will be affirmed.
 I {¶ 5} This is the second appeal involving the same parties. We recently affirmed a trial court decision that had awarded custody of the parties' three minor children to the natural mother, Shanee Stevens. However, we also reversed the trial court's decision on support because the court failed to properly verify Harris' income. In the opinion, we noted that Mr. Harris was not credible on income matters and had not given the trial court adequate documentation of his income. In re Custody ofLena, Keshee and Kesalon Harris, Champaign App. Nos. 2005-CA-42 and 2005-CA-43, slip. op. at pp. 8-9.
 {¶ 6} For ease of discussion, we incorporate the content of our prior opinion, since the record in both appeals is basically the same. The record reveals that Harris is the sole owner of Kes Harris Trucking, LLC, which employs ten to twelve people and owns twelve or fourteen large trucks. The trucks are used to haul asphalt, gravel, dirt, and other items for various contractors. As owner of the company, Harris paid himself only $900 per week, and laid himself off from work generally from December through June, during which time he collected about $400 in unemployment compensation. Harris claimed his work was seasonal, but he was the only employee in the company who was laid off. Other individuals continued to drive. As our prior opinion noted, Harris was evasive about his personal and business finances, and did not provide adequate documentation of his income.
 {¶ 7} Stevens initiated actions for custody and support on November 6, 2003. Before that time, the parties had lived together in a family environment, even though they were not married. Harris was originally ordered to pay $299.50 weekly support for the three children, plus $35 weekly on an arrearage caused by retroactive application of the order. Subsequently, the support amount was increased to $353.20 per week, plus $70 weekly on the arrearage.
 {¶ 8} On May 11, 2004, Stevens filed a motion for contempt, alleging that Harris had failed to pay support as ordered. After a hearing, the magistrate filed a decision on June 28, 2004, finding that Harris had not paid any support, and was $10,224.54 in arrears as of June 16, 2004. The magistrate found Harris in contempt and sentenced him to thirty days in jail, but suspended the sentence, contingent on Harris purging the contempt by timely paying all child support and by paying on the arrearage. In the decision, the magistrate noted that Harris claimed to have been laid off from his job. However, even accepting Harris' position, Harris had failed to make any payments, even when he collected unemployment. Harris objected to this decision, but the trial court overruled the objections on August 10, 2004. No appeal was taken from this order.
 {¶ 9} Subsequently, on August 19, 2004, Stevens filed a second motion for contempt, covering the time period from May 11, 2004, through August 19, 2004. In the motion, Stevens claimed that Harris had made only five support payments, totaling about $1,769. Four payments were voluntary, and one was involuntary, when $527.09 was seized from Harris' bank account.
 {¶ 10} After various continuances, a hearing was held on the second contempt motion on March 16, 2005. By that point in the case, the magistrate had already commented in decisions about Harris' lack of credibility and failure to produce adequate documentation of income. On March 18, 2005, the magistrate filed a second contempt decision, again finding Harris in contempt. The magistrate noted that Harris' arrearage on September 30, 2004, was $10,156.33. The magistrate also observed that while Harris had paid $5,641 on the arrearage on October 5, 2004, that attempt came after the contempt filing.
 {¶ 11} In the decision, the magistrate rejected Harris' defense of inability to comply. In this regard, the magistrate remarked that Harris had maintained throughout the case that child support was too high and was based on incorrect data. However, the magistrate stressed that Harris had failed to produce any documentation that contradicted the tax returns from the corporation. Accordingly, the magistrate found Harris in contempt for a second time and sentenced him to three days in jail. The magistrate again suspended the sentence, contingent on Harris purging the contempt by timely making all current payments on support, plus payments on the arrearage.
 {¶ 12} Harris filed timely objections to this decision, which were overruled by the trial court. On appeal, Harris' first contention is that the trial court erred in rejecting his defense of inability to pay. As support for this argument, Harris points to his own testimony in various hearings, where he claimed various corporate expenses, and stressed his alleged lack of ability to pay.
 {¶ 13} In the case of In re Thomas (Apr. 7, 2000), Montgomery App. No. 18029, 2000 WL 353207, we observed that "an appellate court's standard of review of a trial court's contempt finding is abuse of discretion. * * * `The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.'" Id. at *4 (citations omitted). In Thomas, we also noted that:
 {¶ 14} "[t]he purpose of civil contempt is to impose sanctions in order to coerce the individual to comply with a court order that was previously violated. * * * Such a finding of civil contempt in the trial court must be supported by clear and convincing evidence. * * * Clear and convincing evidence implies that the trier of fact must have a firm conviction or belief that the facts alleged are true. * * *
 {¶ 15} "To summarize the procedure, we must determine if the trial court's attitude was unreasonable, arbitrary or unconscionable in adopting the magistrate's decision finding * * * [the appellant] in contempt. In making this determination, we need to ascertain whether the magistrate, and thus the trial court, had a firm conviction or belief that the facts supported a finding of contempt." Id. (Citations omitted).
 {¶ 16} "A prima facie case of contempt is established when the divorce decree is before the court along with proof of the contemnor's failure to comply with it." Goldberg v. Goldberg,
Cuyahoga App. No. 86590, 2006-Ohio-1948, at ¶ 15. The burden then shifts to the accused party to prove affirmative defenses such as inability to pay. Id.
 {¶ 17} In Goldberg, the Eighth District Court of Appeals found that the obligor (who was a business owner), did not establish inability to pay where he controlled the company payroll, eliminated his own salary, and made a unilateral decision to reduce his support payments without court order. Id. at ¶ 17. The Eighth District also found that the obligor had not established his claim of a downturn in business. Id. These facts are similar to those in the present case, where the obligor owned his own company and controlled decisions that led to his alleged inability to pay.
 {¶ 18} As we mentioned, Harris also failed to provide adequate documentation of his income and assets. In a similar situation, the Third District Court of Appeals made the following observations:
 {¶ 19} "This was not the first time Appellant had been before the court for contempt, and he was fully aware of his obligations. Despite being provided specific opportunities to prepare his defense and put on evidence, he neglected to do so. `Appellant cannot shield himself from the trial court's powers in contempt proceedings by making naked allegations, with no supporting evidentiary material, that he was unable to pay court-ordered child support.' * * * In the absence of documentary evidence confirming Appellant's claims, the trial court was forced to make a finding based on the credibility of his own, self-serving testimony. * * * As discussed above, Appellant had previously diverted assets to avoid his support obligation and repeatedly refused or failed to provide documentation of his financial capabilities or evidence to substantiate claims of inability to pay. Therefore, based upon the evidence presented at the hearing, it was reasonable for the court to conclude that Appellant failed to meet his burden of proving inability to comply with the order." Stuber v. Stuber, Allen App. No. 1-02-65, 2003-Ohio-1795, at ¶ 21 (citations omitted).
 {¶ 20} In our prior opinion, we agreed with the trial court and magistrate about Harris' lack of credibility on income issues. Stevens, slip. op., at p. 13. Harris had many opportunities to give the trial court documents supporting his claims, but failed to do so. The only financial document before the court was the corporate tax return for 2002, which showed $868,855 in buildings and other depreciable assets. The corporate assets included twelve to fourteen large trucks, as well as personal vehicles that Harris drove, including a 2000 Escalade and a 1998 Lincoln Navigator that the corporation had purchased for $47,000. Harris also owned a five bedroom home on five acres in which he had about $100,000 in equity. As we noted in our prior opinion, Harris paid himself a minimal salary and went on unemployment for at least half of each year, even though the corporation had net earnings in 2002 of more than $57,000 — at least if one believes the figures in the income tax return. The actual corporate income may have been considerably higher.Stevens, slip. op., at p. 16.
 {¶ 21} In view of the above facts, the trial court did not abuse its discretion in finding that Harris had the ability to pay child support as ordered. There was ample evidence to support that conclusion. Accordingly, the first assignment of error is without merit and is overruled.
 II {¶ 22} In the second assignment of error, Harris claims that the trial court erred in finding that he had not substantially complied with the court's child support order and in finding him in contempt. In this regard, Harris contends that he made a good faith effort to pay support. Specifically, even though Harris only returned to work in July, 2004, he paid more than he was supposed to pay that month. Harris also notes that he made a substantial payment in September, 2004, which reduced his arrearage by more than half. And finally, Harris contends that he paid substantial sums for clothing and medical expenses for the children that were not part of the child support order.
 {¶ 23} In this regard, the magistrate noted that Harris had made strides in reducing his arrearage. However, the magistrate also stressed that these strides occurred after the contempt motion had been filed. The magistrate further noted that although Harris claimed to have paid various sums for clothing, he did not bring any evidence corroborating these allegations. Consequently, the magistrate rejected Harris' claim of substantial compliance.
 {¶ 24} We agree with these findings. First of all, there is no reason why obligees should have to file repeated contempt motions to obtain previously ordered child support. As an additional matter, the trial court was entitled to discount Harris' claim that he did not return to work until July. Harris was the 100% owner of a business grossing more than $1,656,694 dollars per year, but claimed to be "seasonally" unemployed for six or seven months of the year. However, while Harris was "unemployed," and collected unemployment, the other drivers for the company continued to work.
 {¶ 25} The trial court also had no reason to believe that Harris made payments for items like clothing, since he failed to provide any proof of that fact. Moreover, even if Harris had made such payments, R.C. 3121.45 provides that:
 {¶ 26} "[a]ny payment of money by the person responsible for the support payments under a support order to the person entitled to receive the support payments that is not made to the office of child support, or to the child support enforcement agency administering the support order under sections 3125.27 to 3125.30
of the Revised Code, shall not be considered a payment of support under the support order and, unless the payment is made to discharge an obligation other than support, shall be deemed tobe a gift. (Emphasis added).
 {¶ 27} We have interpreted a predecessor statute [R.C.2301.36(A)] to mean that monies spent on additional purchases and items other than child support are presumed gratuitous. See,e.g., Woolf-Isbel v. Isbel (May 9, 1997), Montgomery App. No. 16086, 1997 WL 231188, *3, citing Mihna v. Mihna (1989),48 Ohio App.3d 303, 549 N.E.2d 558, and Atwater v. King, Greene App. No. 02 CA 45, 2003-Ohio-53, at ¶ 16 (citing R.C. 2301.36(A) for the proposition that "[a]ll child support payments must now be made through a county agency, which maintains a permanent record of payments, and any payments made otherwise do not satisfy the obligation"). See, also, Ruark v. Smith, Franklin App. No. 04-AP-1018, 2005-Ohio-2270, at ¶ 10 (payments for clothes and school lunches are gifts under R.C. 3121.45 unless made to satisfy another obligation).
 {¶ 28} Accordingly, even if Harris had paid for clothing or medical bills for his children, that would not satisfy his child support obligation and could not constitute "substantial compliance" for purposes of the contempt motion. We also note that "substantial compliance may excuse contempt, but does not preclude a finding of contempt." State ex rel. Celebrezze v.Gibbs (1991), 60 Ohio St.3d 69, 75, 573 N.E.2d 62, and Robinsonv. Robinson, Summit App. No. 21440, 2003-Ohio-5049, at ¶ 9.
 {¶ 29} In light of the preceding discussion, the trial court did not abuse its discretion by rejecting Harris' claim of substantial compliance with the support obligation. Because the trial court was justified in finding Harris in contempt, the second assignment of error is without merit and is overruled.
 {¶ 30} Accordingly, both assignments of error are overruled, and the judgment of the trial court is affirmed.
Fain, J., and Donovan, J., concur.