[Cite as *Price v. Nixon*, 2011-Ohio-2430.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| CYNTHIA PRICE | : | |
| | : | Appellate Case No. 2010-CA-058 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 02-JUV-236 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| MATTHEW NIXON | : | Court, Domestic Relations Division, |
| | : | Juvenile Section) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20ᵗʰ day of May, 2011.

. . . . . . . . . . .

SUZANNE K. SABOL, Atty. Reg. #0033077, Suzanne K. Sabol & Associates, 820 South High Street, Columbus, Ohio 43206
        Attorney for Plaintiff-Appellant, Cynthia Price

MATTHEW NIXON, 4281 Avery Road, Hilliard, Ohio 43026
        Defendant-Appellee, *pro se*

SUSAN OTT, 4746 East National Road, Springfield, Ohio 45505
        Defendant-Appellee, *pro se*

LAWRENCE J. HOFBAUER, Atty. Reg. #0065994, 4 West Main Street, Suite 224, Springfield, Ohio 45502
        Guardian Ad Litem

. . . . . . . . . . . .

HALL, J.

{¶ 1}   Matthew Nixon, defendant-appellee, filed a motion for custody of his three

minor children who had been living for years with their mother Cynthia Price, plaintiff-appellant. During the proceedings, the mother filed her own motion for custody. The juvenile court found both parents unsuitable for custody and awarded custody to Susan Ott, the paternal grandmother, who is not a party in this case. Cynthia argues that the juvenile court violated her right to procedural due process of law because, before awarding custody to Ott, a nonparent, the court did not accord her notice or the opportunity to be heard. We agree, so we will reverse and remand.

## I

{¶ 2} Cynthia and Matthew had three children together, all three of whom are minors. The parents never married. No custody order has ever been entered. Cynthia has had de facto and de jure custody. See R.C. 3109.042 (giving an unmarried mother custody until a court says otherwise).[1] On April 2, 2002, the juvenile court ordered Matthew to pay Cynthia child support, after the Clark County Child Support Enforcement Agency (CSEA) filed a complaint for a support order on behalf of Cynthia. A little over three-and-a-half years later, on November 8, 2005, the juvenile court adopted a magistrate's contempt finding, following the Clark County CSEA's motion asking the court to find Matthew in contempt for failing to pay child support in addition to other violations of the court's order. On August 6, 2009, Cynthia herself filed a motion for contempt against Matthew for failing to pay child support.

{¶ 3} On July 21, 2009, Matthew filed a motion asking for custody of the three children and asking that a guardian ad litem (GAL) be appointed. The juvenile court appointed a GAL. On

---

[1] The statute reads in pertinent part, "An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian."

November 30, 2009, the guardian ad litem delivered his Report. A few months later, on April 9, 2010, the guardian ad litem faxed and mailed his Supplemental Report to the parties' attorneys. In the first report, the guardian ad litem concluded that he could not recommend to the court that either parent should have custody. The guardian ad litem's conclusion in the second report was the same, but he had a suggestion for the court. The guardian ad litem wrote, "A possible alternative to either parent acting as custodian would be that Susan Ott be granted custody of the children. This arrangement may be in the children's best interests as both Ms. Price and Mr. Nixon appear to have cordial relationships with Ms. Ott, who seems to be genuinely interested in the welfare of the children. * * * Since they both seem to struggle as parents, perhaps a grandparent would be a better choice for custody." April 9, 2010 Supplemental Guardian ad Litem Report, p.6.

{¶ 4} On April 12, 2010, a hearing on Matthew's custody motion began. In its opening remarks, the juvenile court said:

{¶ 5} "The Court notes that there is not a formal custody order in place in the case as far as a final, appealable order, only prior child support obligations and a presumption, a statutory presumption that has been recited.

{¶ 6} "That being the case, it will be a best interest test and I believe we're going to take the–I have also received a report and supplemental Guardian Ad Litem report from Mr. Hofbauer and he is here to be examined concerning the contents of both of those reports." (April 12, 2010 Tr. 4-5). The first witness to testify was the guardian ad litem. Both parties questioned him on the findings he made in his reports. Then Matthew testified. The final witness that day was Susan Ott, Matthew's mother. She testified in support of awarding custody to her son.

**{¶ 7}**   The hearing was continued until April 30, 2010. On that day, Cynthia filed her own motion for custody, which the court said she could do. Cynthia testified and so, once again, did Matthew. Just before adjourning, the court said, "I do have one thing I want to do before we adjourn for the day. I'm going to take the case under advisement and provide the attorneys with a written decision. I do want Susan Ott to come back in the courtroom. I would like you to get her for me if you would." (April 30, 2010 Tr. 93). Ott took the stand, and the court began:

**{¶ 8}**   "THE COURT: * * * I'm not going to swear you in.

**{¶ 9}**   "I just, ma'am, I need to ask you a couple questions. And this really isn't in the form of testimony. I'm [sic] indicated to the parties that I intend to take the matter under advisement and provide them with a written decision after I evaluate the evidence in the case. Once I, if I do that and if I come to the conclusion that both of these parents are not suitable at this point in time, my question to you is, would you be interested in custody of the children?

**{¶ 10}**   "MS. OTT: We have talked about it before, yes.

**{¶ 11}**   "THE COURT: Well, I'm asking you now, because, I don't want to include you as an option that's available to me unless it's an option that you are agreeable with, because that's a phenomenal responsibility as you are well aware. You may well be aware more than anybody.

**{¶ 12}**   "So, my question to you is, do you have suitable facilities for the kids if I were to exercise that option?

**{¶ 13}**   "MS. OTT: Yes, I do.

**{¶ 14}**   "THE COURT: And would you follow any of my Court Orders if I were to designate you as the legal custodian for the children?

**{¶ 15}**   "In other words, if I grant the parents parenting time and I don't grant either one of

them custody, are you going to follow my orders for whatever visitation and parenting time I give them?

**{¶ 16}** "MS. OTT: Right. Yes.

**{¶ 17}** "THE COURT: Would you be willing to do that?

**{¶ 18}** "MS. OTT: Yes.

**{¶ 19}** "THE COURT: You would accept custody if I decide that is the best route for the children?

**{¶ 20}** "MS. OTT: Yes.

"THE COURT: Okay. That's all I have. I'm not going to afford the attorneys the opportunity to ask you follow-up questions. We'll go ahead and adjourn and I'll provide both attorneys with a written decision as quickly as I can. Thank you very much, ma'am." (April 30, 2010 Tr. 94-95).

**{¶ 21}** On May 7, 2010, the juvenile court issued its decision. The court awarded custody of the three children to Susan Ott. The court also overruled Cynthia's August 6, 2009 Motion for Contempt.

**{¶ 22}** On May 21, 2010, Cynthia filed a motion for a new trial under Civ.R. 59(A)(1), (3), (7), and (8); or, in the alternative, a motion for relief from judgment under Civ.R. 60(B)(1), (2), (4), and (5). Attached is Cynthia's affidavit. In it, she expresses her surprise at the court's decision: "I was shocked when I received this Order. I was not aware that Susan Ott wanted to have custody of the minor children. * * * Had I known that Susan Ott wanted custody of the children or that [the] Court was going to give her custody of the children, I would have wanted to ask her numerous questions while she was on the stand regarding her suitability as a potential

legal custodian. From my understanding though, the Custody case was just between Defendant and I and did not involve the grandparents, except as witnesses." May 20, 2010 Affidavit of Cynthia Price, at ¶9. The juvenile court overruled both motions.

{¶ 23} Cynthia timely appealed the court's May 7, 2010 and May 28, 2010 entries. Matthew, however, did not appeal. He also failed in this case to file an appellee's brief. Accordingly, by rule, "in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." App.R. 18(C).

## II

{¶ 24} Cynthia assigns five errors to the trial court:

### First Assignment of Error

{¶ 25} "The trial court abused its discretion and violated Appellant's Constitutional Due Process rights by awarding custody of the parties' minor children to Appellee's mother without sufficient notice to Appellant and opportunity for Appellant to be heard regarding the possibility of losing custody to a nonparent nonparty."

### Second Assignment of Error

{¶ 26} "The trial court abused its discretion and committed error by considering and relying on a Guardian ad Litem's recommendation and report, which was not introduced as an exhibit at trial."

### Third Assignment of Error

{¶ 27} "The trial court abused its discretion and erred in finding that Appellant was unsuitable to have custody of the minor children."

**Fourth Assignment of Error**

{¶ 28} "The trial court abused its discretion by issuing a visitation order for Appellant that places too much discretion in the hands of Appellee's mother."

**Fifth Assignment of Error**

{¶ 29} "The trial court abused its discretion in overruling Appellant's Motion for Contempt."

{¶ 30} In the first assignment of error, Cynthia argues that the juvenile court erred by awarding custody of her children to Susan Ott. Cynthia contends that, before making the award, the court failed to accord her procedural due process of law. The court, Cynthia says, did not provide her with notice of the possibility that it would award custody to Ott nor did the court provide her with an opportunity to be heard on such an award. We agree.

{¶ 31} The Fourteenth Amendment to the United States Constitution provides that state governments may not "deprive any person of life, liberty, or property, without due process of law." The Ohio Constitution guarantees "due course of law," which is virtually the same as the Due Process Clause of the Fourteenth Amendment. *In re Hua* (1980), 62 Ohio St. 2d 227; see Section 16, Article I of the Ohio Constitution. "[Procedural] [d]ue process of law involves the essential rights of notice, hearing and the opportunity to be heard before a competent tribunal." *Bakaitis v. Bakaitis* (May 23, 1983), Montgomery App. No. 7997, citing *State v. Edwards* (1952), 157 Ohio St. 175, cert. denied 343 U.S. 936. Essentially, "[a]mple opportunity must be afforded the parties in appropriate cases to defend, enforce or protect their rights through presentation of their own evidence, confrontation and cross-examination of adverse witnesses, and oral argument." *Bakaitis v. Bakaitis* (May 23, 1983), Montgomery App. No. 7997, citing *Morrison*,

supra; *Goldberg v. Kelly* (1970), 397 U.S. 254. Here, Cynthia contends that the juvenile court failed to afford her the opportunity to be heard on her parental right to custody of her children.

**{¶ 32}** The United States Supreme Court has defined "liberty" in the due process clause to protect basic aspects of family autonomy. See *Meyer v. Nebraska* (1923), 262 U.S. 390, 399. The Court has subsequently recognized that parents have a fundamental right to custody of their children. See *Santosky v. Kramer* (1982), 455 U.S. 745, 758-759. And the Court has expressly held that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville* (2000), 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49. The Ohio Supreme Court, too, has noted that "[t]he right of a parent to raise his or her child has been defined as a 'natural' right subject to the protections of due process." *In re Perales* (1977), 52 Ohio St.2d 89, 97 n.9, citing *Meyer v. Nebraska* (1923), 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042. "Since parents have constitutional custodial rights," the Ohio Supreme Court has said, "any action by the state that affects this parental right, such as granting custody of a child to a nonparent, must be conducted pursuant to procedures that are fundamentally fair." *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, at ¶16, citing *Santosky v. Kramer* (1986), 455 U.S. 745, 754, 102 S.Ct. 1388, 71 L.Ed.2d 599.

**{¶ 33}** Substantively, the Ohio Supreme Court held in *In re Perales* (1977), 52 Ohio St.2d 89, that custody of minor children may not be awarded to a nonparent "without first making a finding of parental unsuitability." Id. at the syllabus. But the issue raised here is not one of substantive due process but of procedural due process, that is, how a court goes about making an unsuitability finding. We have said that "[t]he procedures for determining parental unfitness,

unsuitability, the best interests of the child, or matters of public safety, through R.C. 2151, must assure the parties of a fair hearing, and protect their constitutional and other legal rights." *In re Stevens* (July 16, 1993), Montgomery App. No. 13523. Here, the procedures used did not assure the parties of such protection. The hearing was being held on Cynthia's and Matthew's motion for custody. The juvenile court correctly noted at the beginning of the hearing that a "best interest" standard would apply. See R.C. 3109.04(B). Cynthia and Matthew proceeded to call and examine witnesses and present evidence that each hoped would convince the court that custody with them was in the children's best interest. It was not until the very end of the hearing that the court indicated it would consider an award of custody to Susan Ott, a nonparent and a nonparty. It appears that the court was following the recommendation the guardian ad litem made in

{¶ 34} his Supplemental Report. But the court specifically denied the parties, the children's parents, an opportunity to present evidence, confronting and cross-examining adverse witnesses, or even by oral argument on the issue of paternal grandmother as custodian. The court simply stated, "I'm not going to afford the attorneys the opportunity to ask you follow-up questions."

{¶ 35} "[P]arents at risk of losing their child to a nonparent must be granted notice and opportunity to be heard under the requirements of the Due Process Clause." *Houser v. Houser* (Aug. 31, 1998), Mercer App. No. 10-98-7, citing *Quilloin v. Walcott* (1978), 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511. The problem was not that the juvenile court raised the issue of suitability sua sponte or found both parents unsuitable. The problem was simply that, before depriving Cynthia and Matthew of custody, the court did not accord them an opportunity to be heard on the issue of the paternal grandmother as custodian. Therefore, we are compelled to

remand so that Cynthia may have the opportunity to be heard before she and Matthew are deprived of their right, as parents, to custody of their children.

{¶ 36} The first assignment of error is sustained.

{¶ 37} Our ruling on the first assignment of error makes the second, third, and fourth assignments of error moot. Moreover, whatever evidence is presented upon remand may impact the second and third assignments of error, and it would be inappropriate to rule on them. We will, though, briefly address the fourth assignment of error. Cynthia argues that the juvenile court's visitation order places too much discretion in the hands of Susan Ott. The court ordered that Cynthia and Matthew "shall be entitled to visitations and parenting time with the children at times and for durations and upon such conditions as they may mutually agree with Ms. Ott." May 7, 2010 Entry, p.10. The juvenile court's jurisdiction to determine custody in this case is found in R.C. 2151.23. Subdivision (F)(1) of that section expressly directs the court to custody considerations contained in the domestic relations statute, R.C. 3109.04. R.C. 3109.04(A)(1) requires a court to include among the rights it divides "the right of the parent who is not the residential parent to have continuing contact with the children." Upon remand, the trial court may consider that, although R.C. 2151.23(F)(1) does not expressly direct the court to R.C. 3109.051, the latter statute expands upon R.C. 3109.04. R.C. 3109.051(A) provides that the court "shall make a just and reasonable order or decree permitting each parent who is not the residential parent to have parenting time with the child at the time and under the conditions that the court directs," unless the court finds that visitation with the non-residential parent is not in the child's best interest. R.C. 3109.051 (A) further provides: "The court shall include in its final decree a specific schedule of parenting time for that parent."

{¶ 38} The second, third, and fourth assignments of error are overruled.

{¶ 39} In the fifth assignment of error, Cynthia argues that the juvenile court erred by overruling her motion for contempt. "[A]n appellate court's standard of review of a trial court's contempt finding is abuse of discretion. * * * The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *In re Thomas* (Apr. 7, 2000), Montgomery App. No. 18029 (Citations omitted.).

{¶ 40} "The purpose of civil contempt," we have said, "is to impose sanctions in order to coerce the individual to comply with a court order that was previously violated. * * * Such a finding of civil contempt in the trial court must be supported by clear and convincing evidence. * * * Clear and convincing evidence implies that the trier of fact must have a firm conviction or belief that the facts alleged are true." *Thomas*. Procedurally, a prima facie case of contempt is established when the court's order is presented along with proof of the accused party's failure to comply. See *In re Harris*, Champaign App. No. 2005CA27, 2006-Ohio-3746, at ¶16 (Citation omitted.). "The burden then shifts to the accused party to prove affirmative defenses such as inability to pay." Id. (Citation omitted.).

{¶ 41} Here, Cynthia contends that she proved that Matthew violated the court order by failing to pay support and Matthew failed to prove an affirmative defense. She points out that, in its May 7, 2010 decision, the juvenile court found that Matthew had a child-support arrearage of $10,708.46 and found that the evidence suggested that he has failed to consistently and adequately provide support since the court first ordered support in 2002. Cynthia testified that she would sometimes go months or years without receiving a support payment. Matthew admitted that he made inconsistent payments. He blamed his failure on inconsistent employment, an employer's

failure to withhold payments, and CSEA's inability to tell him how much he owed.

**{¶ 42}** We think that Matthew testimony provided the court with enough evidence to find that he sufficiently justified his failure to pay. The court could have reasonably believed Matthew when he said that he was unemployed for periods and did not have any money with which to pay his support obligation. Therefore we cannot say that the juvenile court abused its discretion by overruling Cynthia's contempt motion.

**{¶ 43}** The fifth assignment of error is overruled.

### III

**{¶ 44}** That part of the juvenile court's May 7, 2010 order that overrules Cynthia's motion for contempt is Affirmed. The remainder of the order is Reversed. This case is Remanded for further proceedings consistent with this opinion.

**{¶ 45}** In order to provide some stability for the children, our reversal of the trial court shall be stayed for 14 days to allow the juvenile court to address any interim order it deems necessary for their continued care and custody.

. . . . . . . . . . . . .

GRADY, P.J., and FROELICH, J., concur.

Copies mailed to:

Cynthia Price
Matthew Nixon
Susan Ott
Lawrence Hofbauer
Hon. Thomas J. Capper