[Cite as *Alexander v. Alexander*, 2013-Ohio-2349.]

IN THE COURT OF APPEALS FOR CHAMPAIGN COUNTY, OHIO

| | | |
|---|---|---|
| JACQUELINE E. ALEXANDER nka GROVE | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 2013 CA 3 |
| v. | : | T.C. NO. 10DR100 |
| CHARLES D. ALEXANDER, et al. | : | (Civil appeal from Common Pleas Court, Domestic Relations) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____7th____ day of _____June_____, 2013.

. . . . . . . . . .

CATHY J. WEITHMAN, Atty. Reg. No. 0020889, 201 West Court Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellant

JACOB M. JEFFRIES, Atty. Reg. No. 0078470, 133 S. Main Street, New Carlisle, Ohio 45344
    Attorney for Defendants-Appellees

KIRK ELLIS, Atty. Reg. No. 0055275, 121 S. Main Street, Urbana, Ohio 43078
    Attorney for Defendant-Appellee

. . . . . . . . . .

FROELICH, J.

**{¶ 1}** Jacqueline Grove appeals from a judgment of the Champaign County Court of Common Pleas, Domestic Relations Division, which denied her Motion to Change Allocation of Parental Rights and Responsibilities regarding her three minor children, who currently reside with their paternal grandparents, Charles R. and Minnie Alexander.

**{¶ 2}** Because we conclude that the trial court did not abuse its discretion in overruling Grove's motion, the judgment of the trial court will be affirmed.

I

**{¶ 3}** Grove and her former husband, Charles D. Alexander, have three children: two boys and one girl. In 2010, Grove filed a complaint for divorce, and her husband's parents, Charles R. and Minnie Alexander (hereinafter, "the Alexanders"), intervened in the action as third-party defendants. During the divorce proceedings, an agreed entry was filed in the trial court, stating that the Alexanders "shall have the primary rights and responsibilities for the care of" the children (the Alexanders' grandchildren), who were then ages 15, 9, and 5. The agreed entry included detailed provisions for Grove's visitation with the children.[1] Grove was awarded visitation on alternating weekends and for six weeks during the summer. The parties acknowledged in their agreement that the oldest child might refuse to visit with Grove, but they agreed that he would be encouraged to do so.

**{¶ 4}** In April 2012, Grove filed her motion to reallocate parental rights and responsibilities. The motion was prompted, in part, by the children's father's imminent release from prison and Grove's concern that he would end up living with his parents and the children; the motion stated that such an arrangement would be contrary to a guardian ad litem's

---

[1] The children's father was in prison, and the agreed entry did not address his parenting rights.

"suggestion" (earlier in the case) and would not be in the best interest of the children. In November 2012, the trial court conducted a hearing on Grove's motion.

{¶ 5} Although the motion listed all three children, Grove modified her request at the hearing, indicating that she did not seek custody of the oldest child; he was a senior in high school, had two jobs, had lived with his grandparents for a long time, and she "[didn't] want to disrupt him." Thus, the hearing only addressed the custody of the two younger children.

{¶ 6} At the hearing, Grove stated that, on the advice of the guardian ad litem in the case,[2] she (Grove) had been working on making some changes to create a more stable home for her children. She presented evidence that she was employed and had lived in her current apartment for one and one-half years. She indicated that she had room for the children in the three-bedroom apartment she shared with her boyfriend. She went to the children's school for lunch as often as possible (once a month or less), and talked with the principal about some problems that the younger son had been having. Several of Grove's family members and friends testified that she was bonded with the children and was a good parent.

{¶ 7} Grove expressed concern about the situation in which the children were then living. She testified that Charles Alexander's (the children's grandfather's) health, which had not been good at the time of the agreed entry, had further deteriorated. Grove also stated that the children's father, who was out of prison by that time, lived "like four doors down" from the grandparents. She recounted (without objection) that, in the past, the guardian ad litem had

---

[2]During her testimony, Grove referred several times to statements a guardian ad litem had made to her at an earlier point, seemingly around the time of her divorce from Charles D. Alexander and the agreed entry related to custody of the children. Grove did not identify the guardian ad litem by name, but the guardian ad litem who testified at the hearing, Linda McGillivray, stated that she had been the guardian ad litem during the "previous custody dispute," as well as in the current matter.

expressed concern that the children "should [not] spend very much time with [their father] seeing what he went to prison for," i.e., domestic violence against Grove and having weapons while under disability. Grove also mentioned some past incidents at the Alexanders' home involving their other adult children, but admitted on cross-examination that these incidents had occurred prior to the agreed entry granting custody to the Alexanders. Grove and her boyfriend testified that she had received less summer visitation time with the children than required by the court's order and that she had trouble contacting the children by telephone when they were with the Alexanders, even though she had bought them cell phones for this purpose.

{¶ 8} The guardian ad litem testified at the hearing and submitted a report for the court. Her report indicated that Grove's home was appropriate for the children and that Grove interacted well with the children. The guardian ad litem further stated, however, that the children were doing very well with the Alexanders and were "very happy;" based on reports from their school and her conversations with the children, she concluded that the prospect of a change in custody was causing significant stress for the children, particularly the younger son, who made a comment at school about having "no reason to live." The guardian ad litem also testified that the two younger children are very closely bonded with their older brother, who was determined to stay with the grandparents. She concluded that "the children would be devastated if they had to leave their grandparents" and recommended that the children remain with the Alexanders, with continued visitation with their mother.

{¶ 9} With respect to telephone contact, the guardian ad litem indicated that there had "been an issue," which Grove claimed to have addressed by buying the children cell phones. The guardian ad litem also stated that Grove had complained about the Alexanders calling the

children daily during visitation.

{¶ 10} Charles R. Alexander (the children's grandfather) testified that the children were doing very well in his household and that, despite some improvements in Grove's situation, he believed a change in custody would be detrimental to the children. He also testified to the children's very close relationship with their older brother. He contradicted Grove's testimony that Grove had given the children cell phones, stating that he had actually provided one to the younger boy, but that Grove took it away during visits with her. He agreed with Grove's testimony that she had only visited with the children for five weeks the previous summer, but he stated that Grove had received an extra week of visitation during the children's fall break.

{¶ 11} The children's father testified to his preference that the children remain with his parents, where they have always been happy and done well.

{¶ 12} After the hearing, the trial court "acknowledge[d] that [Grove] had become much more stable in her employment, her residence/housing situation, and her consistency in exercising parenting time with the children. However, during the time [Grove] has become more stable[,] so have the children in the custody of [the Alexanders]. Thus, the harm of a change in environment for the children outweighs any advantages that may have now arisen to justify a change." The court also noted that the change prompting the request for a modification occurred in the non-residential parents' home, but that, pursuant to R.C. 3109.04(E)(1)(a), the change must have occurred "in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree" in order to justify a modification. The court denied Grove's motion for a change in allocation of parental rights.

II

{¶ 13} Grove raises one assignment of error on appeal:

THE TRIAL COURT ABUSED ITS DISCRETION IN NOT FINDING A CHANGE OF CIRCUMSTANCES AND AWARDING CUSTODY TO PLAINTIFF-APPELLANT.

{¶ 14} Grove contends that the trial court erred in not granting her motion to change parental rights and responsibilities, in light of improvements in her situation and the problems with visitation and telephone contact about which she presented evidence.

{¶ 15} It is well-settled that the right of a parent to raise his or her own child is an "essential" and "basic civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990). *See also Price v. Nixon*, 2d Dist. Clark No. 2010-CA-058, 2011-Ohio-2430, ¶ 32; *In re Kovaleski*, 4th Dist. Washington No. 05CA13, 2006-Ohio-317. Thus, "[t]he general rule in Ohio regarding original custody awards in disputes between a parent and a non-parent is that parents who are 'suitable' persons have a 'paramount' right to the custody of their minor children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children." *Masitto v. Masitto*, 22 Ohio St.3d 63, 65, 488 N.E.2d 857 (1986), citing *In re Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977); *DeLucia v. West*, 7th Dist. Mahoning No. 05-MA-5, 2005-Ohio-6933, ¶ 21. However, once an original custody award has been made, it generally will not be modified unless a change of circumstances has been demonstrated and a modification "is necessary to serve the best interest of the child." *Id.*, citing R.C. 3109.04(B)(involving maternal grandparents previously designated as legal guardians); R.C. 3109.04(E)(1)(a). See also, *Kovaleski* at ¶ 21

(involving a paternal aunt who had been named residential and legal guardian); *DeLucia at ¶* 31 (holding that, although father had not surrendered parental rights when he entered into and court adopted a shared parenting agreement with maternal grandparent, best interest test applied to father's request for modification).

{¶ 16} In all matters involving a modification of parental rights and responsibilities, R.C. 3109.04(E)(1)(a) also expressly requires that a court find, based on facts that have arisen since the prior decree or were unknown to the court at the time of the prior decree, that a change of circumstances of the child, the residential parent, and a parent subject to a shared parenting decree has occurred and that the modification is necessary to serve the best interest of the child. A change in circumstances may logically be described as some event, occurrence, situation, or the like that has a material and adverse affect on the children. *Moyer v. Moyer*, 10th Dist. Franklin No. 93AP-157, 1993 WL 169098, *1 (May 13, 1993), citing *Wyss v. Wyss*, 3 Ohio App.3d 412, 445 N.E.2d 1153 (10th Dist. 1982).

{¶ 17} In Grove's case, the trial court found that there had not been a change of circumstances of the children or the residential parents (the Alexanders) and that it would not be in the best interest of the children to change the custodial arrangement. The trial court's findings are supported by the record. Although there appear to have been some minor disputes or deviations from the agreed entry regarding parenting time and telephone contact, the current custodial arrangement appears to be working well for the children. They are happy and doing well in school, and they enjoy a close relationship with their brother, who also lives with the Alexanders.

{¶ 18} The children are also able to see their father regularly while living with the

Alexanders, a relationship that seems to be important to the children. The possibility of a change of custody caused stress to the children, especially the younger boy. There was ample evidence that the children are doing well under the Alexanders' care, although they also adjust well and enjoy visiting with their mother. There was no dispute that Grove's ability to parent the children had improved since the agreed entry was filed, but the trial court did not abuse its discretion in concluding that no change in the circumstances in the children or the Alexanders compelled a change of custody and that it was not in the best interest of the children to do so.

{¶ 19} The assignment of error is overruled.


III

{¶ 20} The judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, P.J. and WELBAUM, J., concur.

Copies mailed to:

Cathy J. Weithman
Jacob M. Jeffries
Kirk Ellis
Hon. Lori L. Reisinger