[Cite as *Baker v. Baker*, 2011-Ohio-2181.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

BETTY J. BAKER                          :
                                        :          Appellate Case No. 23962
      Plaintiff-Appellee            :
                                        :          Trial Court Case No. 07-DR-164
v.                                      :
                                        :
HAROLD K. BAKER                         :          (Civil Appeal from Common Pleas
                                        :           Court, Domestic Relations)
      Defendant-Appellant       :
                                        :
                        . . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of May, 2011.

. . . . . . . . . . .

CHARLES D. LOWE, Atty. Reg. #0033209, 1500 Kettering Tower, Dayton, Ohio 45423
      Attorney for Plaintiff-Appellee

RICHARD HEMPFLING, Atty. Reg. #0029986, Flanagan, Lieberman, Hoffman & Swaim, 15
West Fourth Street, Suite 100, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Harold Baker appeals from a judgment and final decree of divorce rendered by the Montgomery County Court of Common Pleas, Domestic Relations Division. Mr. Baker contends that the trial court abused its discretion with regard to the division of property. Specifically, he claims that the trial court ignored evidence that he

deems sufficient to establish that certain assets either were either his non-marital property or were purchased with his non-marital funds.

**{¶ 2}** We conclude that the trial court did not abuse its discretion. The trial court chose not to credit Mr. Baker's testimony regarding the nature of the assets at issue and we will not substitute our judgment for that of the trial court as the trier of fact.

**{¶ 3}** Accordingly, the judgment of the trial court is Affirmed.

I

**{¶ 4}** Harold and Betty Baker were married in 1988. Both had been married before. No children were born as a result of their marriage to each other. Mrs. Baker filed a complaint for divorce in February 2007. A hearing was held in August 2009, following which the trial court granted the parties a divorce.

**{¶ 5}** Of relevance to this appeal, the trial court found that proceeds from the sale of a business founded by Mr. Baker prior to the marriage, but sold during the marriage, had been commingled with marital property, and could not be traced to specific assets having specific value. The trial court also found that certain Morgan Stanley accounts held in Mr. Baker's name constituted marital property. The trial court further found that the real estate and automobiles and a recreational vehicle owned by the parties constituted marital property. The trial court further concluded that funds in a certificate of deposit were marital property and that Mr. Baker had made loans to relatives using marital funds. The trial court divided all of these assets and accounts receivable as marital property. Mr. Baker appeals.

II

{¶ 6}   Mr. Baker's First and Second Assignments of Error state as follows:

{¶ 7}   "THE TRIAL COURT ERRED IN FAILING TO RECOGNIZE ANY OF THE PROCEEDS FROM THE SALE OF DAYTON NUT AND BOLT AS HAROLD'S SEPARATE PROPERTY.

{¶ 8}   "THE TRIAL COURT ERRED IN DEEMING THE ENTIRE BALANCE IN HAROLD'S MORGAN STANLEY ACCOUNTS TO BE MARITAL PROPERTY."

{¶ 9}   Mr. Baker founded Dayton Nut and Bolt in 1980.  Mrs. Baker began working at the company in 1986, and she and Mr. Baker began dating at that time.   They were married in 1988.  The business was sold in 1997 for the gross sum of $500,000, with a net profit of about $411,000. Mr. Baker argues that he presented sufficient evidence to establish that, at the time the parties married, the business was valued at $500,000.  He further argues that he presented evidence sufficient to trace the proceeds from the sale of the business into certain Morgan Stanley accounts – accounts he claims were his pre-marital accounts. Mr. Baker claims that the trial court incorrectly found that he was required to provide documentation in order to trace the proceeds from the sale into non-marital assets.

{¶ 10} We begin by noting that Mr. Baker presented documentation regarding his Morgan Stanley accounts for 1998 through 2009.  Other than Mr. Baker's testimony, there is nothing to demonstrate that these accounts existed prior to the date of the marriage. Furthermore, he presented no documentation to support the claim that he deposited the entire amount of the sale proceeds into these accounts.   Indeed, at one point during cross-examination, Mr. Baker stated that he "put $225,000 in mine and Betty's joint checking account."   Mrs. Baker's testimony indicates that some, but not all, of the proceeds were

deposited into the Morgan Stanley accounts.

{¶ 11} Of more importance, the account documentation shows that the accounts had a balance in December 1998 of approximately $959,000. The following year, the account was reduced to $300,000; $111,000 less than the amount of the net sale proceeds. It further shows that the account value reached a high of just over one million dollars in 2003 and that by 2009 – the date of the hearing – had a value of approximately $800,000. The documentation shows that during that course of time deposits and withdrawals were made on the account. Indeed, Mr. Baker admitted that "from time to time" during the marriage he deposited some of his income into the accounts. The withdrawn monies appear to have been used, at least in part, to pay marital debts and expenses.

{¶ 12} Even if Mr. Baker did deposit the entire net proceeds from the sale of his business into these accounts, it is clear that some of those monies had been withdrawn as of December 1999. It is not clear what use was made of the withdrawn monies. Furthermore, given that the evidence shows that subsequent withdrawals were used to pay for marital expenses and that marital income was deposited into the accounts, we cannot say that the trial court abused its discretion by finding that the accounts constituted marital property.

{¶ 13} Where a non-marital asset is converted into cash, and deposited into an account, the tracing required to preserve the non-marital character of some amount – "X" – of the proceeds requires that the party claiming the separate property show that the amount in the account was never reduced to less than X. Otherwise, unless a further tracing can be made from the account into some other form of property, the value – X – of the original non-marital property cannot be traced forward to an asset currently owned by the parties. In the case

before us, there was a failure of proof of the amount of money that was in the Morgan Stanley account from the time the proceeds of Mr. Baker's business were deposited into the account to the time of the hearing, because the records of the account were sketchy and incomplete.

{¶ 14} The trial court's finding that the monies in the Morgan Stanley accounts were marital property is supported by sufficient, credible evidence; we find no abuse of discretion.

{¶ 15} We further reject Mr. Baker's claim that the trial court improperly required documentation as a condition precedent to finding that the assets were traceable into non-marital assets. Our reading of the trial court's decision shows that the trial court simply did not find Mr. Baker's testimony convincing regarding the tracing of the proceeds from the business to a current portion of the Morgan Stanley accounts. The trial court was in the best position to assess the credibility of witnesses and the weight to be given their testimony; we will not substitute our judgment for that of the trial court on that issue. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 81.

{¶ 16} There is nothing in the record leading us to conclude that the trial court abused its discretion in finding a failure of proof on Mr. Baker's claim that the proceeds of the sale of his business were traceable to a specific amount in the Morgan Stanley account. The First and Second Assignments of Error are overruled.

III

{¶ 17} Mr. Baker's Third Assignment of Error is as follows:

{¶ 18} "THE TRIAL COURT ERRED IN TREATING ALL OF THE VALUE OF THE REAL ESTATE AS MARITAL PROPERTY."

{¶ 19} According to Mr. Baker, he presented evidence sufficient to support a finding that the real estate owned at the time of the divorce had been paid for with his non-marital funds. Therefore, he contends that the trial court abused its discretion by treating these properties as marital.

{¶ 20} The evidence in the case shows that at the time of the marriage Mr. Baker owned a residence located on Paragon Road, valued at $114,000. Mrs. Baker owned two homes, both of which were sold during the course of the marriage for the sum of approximately $81,000. In 1995 the couple purchased a condominium at Sugar Bend Trail for the sum of $135,000. In 1998, the couple sold the Paragon Road property for the net sum of $158,376.95. Finally, the couple also purchased another condominium at Vienna Estates Drive for the sum of $250,000.

{¶ 21} At trial, Mrs. Baker stated that she did not contribute any of her separate monies to the purchase of the Sugar Bend Trail or Vienna Estates property. Mr. Baker, however, testified that he used the funds from the sale of the Paragon Road property to make the purchase of the Sugar Bend Trail condominium. He also testified that he used non-marital money from his Morgan Stanley account to purchase the Vienna Estates condominium. He argues that Mrs. Baker's admission that she did not use her separate monies to help purchase these properties is support for his claim that he used his non-marital funds to make the purchases.

{¶ 22} The trial court stated that it did not find credible Mr. Baker's claim that he used the proceeds from the Paragon Road property to purchase the Sugar Bend property. The trial

court specifically relied upon the fact that the Sugar Bend property was purchased three years before the sale of the Paragon Road property. And the trial court noted that Mr. Baker had failed to present any evidence to support his claim.

{¶ 23} There are no documents in this record to show that the proceeds from Paragon Road were used to purchase the Sugar Bend condo. We also find no support for the claim that non-marital funds were used to purchase the Vienna Estates property. Although the Morgan Stanley accounts do show the withdrawal of the monies used to purchase Vienna Estates, we have concluded in Part II above, there was a failure of proof that those monies were non-marital. Furthermore, we do not construe Mrs. Baker's testimony as admitting that Mr. Baker used his non-marital monies to purchase either of the properties at issue. She merely acknowledged that she did not use any of her separate money to aid in the purchase, and that the money used was from an account held in Mr. Baker's name. But she did not testify that those monies were non-marital.

{¶ 24} We cannot fault the trial court for failing to credit Mr. Baker's testimony in this regard. We find no abuse of discretion.

{¶ 25} The Third Assignment of Error is overruled.

IV

{¶ 26} The Fourth Assignment of Error raised by Mr. Baker provides:

{¶ 27} "THE TRIAL COURT ERRED IN TREATING ALL OF THE VEHICLES AS MARITAL PROPERTY."

{¶ 28} Mr. Baker claims that the trial court abused its discretion by deeming all five of the vehicles, as well as a Pace Arrow Recreational Vehicle (the"RV"), to be marital property.

He argues that Mrs. Baker conceded that she did not use her separate monies for these vehicles, and that she admitted that he used his separate monies to purchase them. He further contends that he reimbursed Mrs. Baker for her portion of the RV; therefore the RV must be treated as his separate property.

{¶ 29} From our review of the testimony of both parties, we cannot say that the trial court abused its discretion in determining that the vehicles constituted marital property. Mrs. Baker did testify that she did not use her own money to purchase the vehicles. But she did not testify that Mr. Baker used non-marital funds to purchase them; she merely acknowledged, on cross-examination, that he used money from an account titled solely in his name. Mr. Baker's testimony with regard to the vehicles is convoluted, but it appears that he merely testified that the monies used to purchase the vehicles came from trade-ins on previously owned vehicles and from money in his Morgan Stanley accounts. Again, there is a failure of proof that the funds in the Morgan Stanley were Mr. Baker's separate property, and there is no evidence that the cars used as trade-ins were his separate property. In short, the record supports the trial court's finding that the vehicles in question were marital property.

{¶ 30} Turning to the issue of the RV, we note that the evidence is thin. It appears that the parties had previously owned a houseboat, which they had purchased using $70,000 – equal amounts of $35,000 coming from each of their own non-marital funds. When they traded in the houseboat, Mr. Baker returned Mrs. Baker's funds, plus interest, to her. He then used his portion of the trade-in monies to purchase a 2006 Pace Arrow RV. It further appears that Mr. Baker also took out a loan to purchase the RV, and that the parties made payments on that debt during the marriage and were, at the time of the divorce, continuing to make

payments. At the time of the divorce, the RV had "an approximate value of $79,000." It is not clear how much debt was owed on it at that time.

{¶ 31} The trial court noted that both parties wished to sell the RV; therefore, it ordered that "upon the sale of this vehicle, [Mr. Baker] is awarded his separate property interest of $35,000 plus interest first, the remaining proceeds, if any, shall be equally divided between the parties." Mr. Baker contends that this was error and argues that the trial court should have credited him with "the entire amount he has invested, i.e., his $35,000 plus the [monies that were returned to Mrs. Baker]."

{¶ 32} We find no abuse of discretion. The trial court gave Mr. Baker credit for the amount of his separate property, plus interest, used to purchase the RV. Any money remaining from the sale after the payment of the debt on the RV is, based upon the evidence before us, a marital asset. The Fourth Assignment of Error is overruled.

V

{¶ 33} Mr. Baker asserts the following for his Fifth Assignment of Error:

{¶ 34} "THE TRIAL COURT ERRED IN ORDERING AN EQUAL DIVISION OF HAROLD'S CHASE BANK ACCOUNTS."

{¶ 35} Harold also argues that the trial court abused its discretion by ordering the division of his Chase Bank certificate of deposit, which was valued at approximately $100,000 at the time of the divorce hearing. In support, he states that the account was funded entirely from social security retirement benefits that he began receiving in 1997. He argues that "at least that amount should have been deemed to be [his] separate property."

{¶ 36} We begin by noting that federal law does prohibit a trial court from dividing social security benefits. *Carreker v. Carreker*, Cuyahoga App. No. 93313, 2010-Ohio-3411, ¶ 41. But the trial court found that Mr. Baker failed to prove that the funds in the certificate of deposit were his separate money, or that the account was funded from social security benefits. Although Mr. Baker did testify that the account was funded from social security benefits, which he started drawing in 1997, the trial court chose not to credit this testimony. No abuse of discretion has been demonstrated. Accordingly, the Fifth Assignment of Error is overruled.

VI

{¶ 37} Mr. Baker's Sixth Assignment of Error states as follow:

{¶ 38} "THE TRIAL COURT ERRED IN AWARDING TO BETTY HALF THE VALUE OF MONEY LENT TO HAROLD'S RELATIVES."

{¶ 39} During the course of the marriage, Mr. Baker loaned his daughter the sum of $17,580, and he loaned the sum of $10,000 to his uncle. The trial court once again found that Mr. Baker failed to prove that these loans had been made using his separate property, and ordered him to pay Mrs. Baker one-half the value of those receivables. Mr. Baker has failed to show that the trial court abused its discretion by finding a failure of proof on this issue.

{¶ 40} The Sixth Assignment of Error is overruled.

VII

{¶ 41} Mr. Baker's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

HALL and BROGAN, JJ., concur.

(Hon. James A. Brogan, retired judge from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Charles D. Lowe
Richard Hempfling
Hon. Denise L. Cross