[Cite as *Klein v. Botelho*, 2011-Ohio-4165.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

ALEXANDRE KLEIN                          :

    Plaintiff-Appellant              :          C.A. CASE NO.    24393

v.                                       :          T.C. NO.    05FSO16

MARLISE BOTELHO                          :          (Civil appeal from Common
                                                    Pleas Court, Domestic Relations)
    Defendant-Appellee              :

                                         :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ____19th____ day of ____August____, 2011.

· · · · · · · · · ·

JAMES R. KIRKLAND, Atty. Reg. No. 0009731, 130 W. Second Street, Suite 840, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant

KENNETH J. KROCHMAL, Atty. Reg. No. 0017768, 4403 North Main Street, Dayton, Ohio 45405
    Attorney for Defendant-Appellee

· · · · · · · · · ·

FROELICH, J.

{¶ 1} Alexandre Klein appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which denied his motion for a change of custody, found him in contempt for non-payment of child support, spousal support, and

other sums owed to his former wife, Marlise Botelho, and refused to reduce his support payments. For the following reasons, the judgment of the trial court will be affirmed.

I

**{¶ 2}** Klein and Botelho were married in Brazil in 1986 and were granted a Dissolution of Marriage in the Circuit Court of Cook County, Illinois, in May 2003. By agreement of the parties, Botelho was granted sole custody of their two children, a son and a daughter, and Klein was to pay $3,500 per month in child support. Klein also agreed to pay $1,500 per month in spousal support for a maximum of 84 months. Later the same year, the Cook County Court reduced the award of child support to $2,345 per month and the award of spousal support to $1,005 per month.

**{¶ 3}** Klein worked as a professional musician during the parties' marriage. Soon after the dissolution, he left his employment with the Chicago Symphony due to a neurological disorder and moved to Brazil, his native country. He later obtained employment as a professor of music at Oberlin College in northern Ohio. Botleho moved to Dayton with the children after the dissolution and enrolled in school to become a physician's assistant.

**{¶ 4}** In May 2005, Klein filed a Petition to Register a Foreign Decree in the Montgomery County Court of Common Pleas, Domestic Relations Division ("the trial court"). The trial court ordered the Clerk of Courts to register the decree on the condition that Klein provide certain additional documentation, which he did. Klein also filed a motion to modify parenting time as to both children and to reduce or terminate child support and spousal support. Shortly thereafter, Botelho filed a Motion to Show Cause

why Klein should not be held in contempt for failure to pay child support, spousal support, and amounts owed pursuant to the parties' property settlement. In September 2005, Klein filed a motion to modify parental rights and responsibilities in regard to the parties' son only. A guardian ad litem was appointed and, in May 2006, the magistrate held a hearing on all three motions.

{¶ 5} In August 2006, the magistrate denied Klein's motion for modification of parental rights and responsibilities, finding that he had established neither a change of circumstances nor that it would be in the son's best interest to do so. The magistrate also denied Klein's motions to modify parenting time and to modify child support and spousal support, concluding that he had "failed to present sufficient evidence documenting his income." Botelho's motion for a finding of contempt was also overruled.

{¶ 6} Klein filed objections to the magistrate's decision. In the summer of 2007, before the trial court ruled on his objections, Klein filed additional motions for reduction of child support and spousal support and for a change of custody of both children. Botelho filed additional motions for contempt. The parties filed numerous other motions related to support, visitation, travel, attorney fees, and health insurance while they awaited the trial court's ruling on Klein's objections.

{¶ 7} In August 2007, the trial court filed a Decision and Judgment, which overruled all of Klein's objections to the magistrate's August 2006 decision and denied his motions which had been filed in 2005.

{¶ 8} On nine dates between February 2008 and January 2009, the magistrate held a hearing on Klein's July 2007 Motion for Change of Custody and other matters. In May

2009, the magistrate filed a Decision and Permanent Order, in which he overruled Klein's motions to reallocate parental rights and responsibilities and to reduce child and spousal support. Additionally, the magistrate: 1) found that Klein was in contempt for his failure to pay child and spousal support; 2) ordered Klein to pay $1,000 in attorney fees related to the contempt proceedings; 3) set the support arrearage at $91,094.93; 4) found that additional funds owed by Klein to Botelho pursuant to the Illinois decree were unpaid and added these amounts to the support arrearage ($23,025.78 related to the unpaid property settlement and $2,640 in unreimbursed medical expenses); and 5) found Klein in contempt for failure to return the children timely at the end of his summer visitation in 2008.

{¶ 9} In June 2009, Klein filed thirty-one objections to the magistrate's decision and entry; Botelho filed one objection, which related to the trial court's failure to award her attorney fees beyond those awarded for Klein's contempt. In August 2009, while these objections were pending, Klein filed another motion for change of custody of his son.[1]

{¶ 10} In September 2009, the parties filed an agreed entry wherein they agreed that Klein would have custody of their son and Botelho would have custody of their daughter. The agreement did not expressly state or otherwise imply that it was a provisional order pending the trial court's ruling on Klein's objections.

{¶ 11} On November 18, 2010, the trial court overruled all of the parties' objections to the magistrate's 2009 decision. In overruling Klein's objections to the magistrate's custody determination, the trial court stated that those objections were "irrelevant" in light of the parties' agreed entry regarding custody.

---

[1] Klein also filed twelve supplemental objections in April 2010.

{¶ 12} Klein appeals from the trial court's judgment, raising thirteen assignments of error.

II

{¶ 13} We review a trial court's determination regarding the modification of a custody arrangement under an abuse of discretion standard. *Pellettiere v. Pellettiere*, Montgomery App. No. 23141, 2009-Ohio-5407, ¶10-12; *Beismann v. Beismann,* Montgomery App. No. 22323, 2008-Ohio-984, ¶20. A trial court's finding of contempt and its decision with respect to modification of a support order are also reviewed for an abuse of discretion. *Price v. Nixon*, Clark App. No. 2010-CA-58, 2011-Ohio-2430, ¶38; *Bell v. Bell*, Montgomery App. No. 23714, 2010-Ohio-5276. "Abuse of discretion" is a term used to indicate that a trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983) 5 Ohio St.3d 217, 219.

{¶ 14} The credibility of witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231. The trier of fact hears the testimony of all of the witnesses, sees their demeanor on the stand, and "is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses.'" *State v. Spears,* 178 Ohio App.3d 580, 2008-Ohio-5181, ¶12, quoting *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288. Thus, we must afford substantial deference to the trier of facts' determinations of credibility. Id. An appellate court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. *Baker v. Baker,* Montgomery App. No. 23962,

2011-Ohio-2181, ¶15, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 81.

III

{¶ 15} Klein's first assignment of error states:

{¶ 16} "THE TRIAL COURT ACTED UNREASONABLE [SIC], ARBITRARY [SIC], AND UNCONSCIONABLY  WHEN IT DETERMINED THAT ALL THE OBJECTIONS RAISED BY APPELLANT TO THE MAGISTRATE'S DECISION CONCERNING CUSTODY WERE 'IRRELEVANT.'"

{¶ 17} Klein contends that the trial court conducted only a "cursory review" of the magistrate's decision and did not consider the complete record.   He also claims that the trial court "dismissed all of [his] objections *** as 'irrelevant'" without fully considering them.

{¶ 18} Klein's representations with respect to the trial court's decision are inaccurate.  The trial court filed a ten-page decision addressing his objections.  While he claims that there "is no indication that [the trial judge] did any review of the volumes of transcript," the trial court expressly stated that it had reviewed "the multiple transcripts of the proceedings" and the children's interviews with the magistrate.

{¶ 19} Moreover, many of Klein's objections related to the magistrate's determinations of the credibility of witnesses and failure to comment on "each and every item of evidence in order to reach his conclusions."   The finder of fact is not required to explain why it weighs some factors or testimony more heavily than others.  *Seitz v. Seitz*, Montgomery App. No. 23698, 2010-Ohio-3655, ¶19. The trial court acted within its discretion in addressing arguments related to credibility without extensive discussion and

correctly observed that the magistrate was "not required to comment specifically on every aspect of the testimony." The trial court noted that the fact that certain testimony struck the magistrate as untruthful did not require the magistrate to specifically compare that testimony with the testimony of other witnesses. Moreover, the magistrate was in a unique position to resolve conflicting evidence and to assess witness credibility because he saw the witnesses and heard the evidence firsthand. Although the trial court was required to independently consider the evidence presented to the magistrate, it did not err in giving some deference to the magistrate's credibility determinations. *Mandelbaum v. Mandelbaum*, Montgomery App. No. 21717, 2007-Ohio-6138, ¶103, citing *MacConnell v. Nellis*, Montgomery App. No. 19924, 2004-Ohio-170, ¶16, n.1.

{¶ 20} Klein also incorrectly states that the trial court overruled all of his objections as "irrelevant." The trial court only found that Klein's objections were irrelevant to the extent that they challenged the magistrate's denial of his motion for change of custody, because the agreed order was filed between the time of the magistrate's decision and the time of the trial court's judgment. The interpretation of language used by parties in an agreed entry is governed by contract principles and is subject to the same rules of construction applicable to other contracts. *Reik v. Bowden*, 172 Ohio App.3d 12, 2007-Ohio-2533, ¶12, citing *Herold v. Herold*, Butler App. No. CA2004-07-179, 2005-Ohio-4441, and *Brown v. Brown* (1993), 90 Ohio App.3d 781, 784. The agreed entry did not state that the agreement was provisional and bound the parties only until the court reached its decision.[2] Because the language in the agreed entry did not indicate that

---

[2]At oral argument, Klein's attorney claimed that the agreed entry was "subject to the final decision of the court," but

it was conditioned on or subject to a different resolution of the issue by the trial court, the court correctly determined that Klein's objections to the magistrate's findings on custody had "become irrelevant since *** the parties entered into an agreed order" wherein Klein was designated the residential parent and legal custodian of their son and Botelho was designated the residential parent and legal custodian of their daughter.

{¶ 21} The first assignment of error is overruled.

IV

{¶ 22} Klein's second assignment of error states:

{¶ 23} "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO FIND A CHANGE OF CIRCUMSTANCES WHEN APPELLEE BLATANTLY DENIED APPELLANT PARENTING TIME WITH THE CHILDREN AND FAILED TO TAKE ANY CORRECTIVE MEASURES TO ADDRESS BOTH CHILDREN'S BEHAVIORAL PROBLEMS."

{¶ 24} Klein contends that the trial court erred in failing to find a change of circumstances warranting a change of custody. He asserts that several conflicts related to parenting time, the children's poor behavior and school performance, and the children's desires to live with him constituted a change of circumstances. Botelho argues that Klein's evidence did not substantiate his claim that she created more difficulty with parenting time than he did, and she claims that neither their son's poor behavior and school performance nor his desire to live with his father was a new development since the court last considered a change of custody.

---

there is no language in the agreed entry itself to support such an interpretation.

**{¶ 25}** Although the parties and the trial court thoroughly addressed this argument, we must conclude that the trial court's finding that there had not been a change of circumstances was inconsequential in light of the parties' agreed entry with respect to the children's custody. As we discussed under the first assignment of error, the parties' agreement with respect to the custody of the children eliminated the need for the trial court to make the required statutory findings for a change of custody, including a change of circumstances.

**{¶ 26}** Even assuming, for the sake of argument, that the agreed entry had not resolved the custody issue, the record supports the trial court's finding that there had not been a change of circumstances.

**{¶ 27}** The change of custody analysis begins with R.C. 3109.04(E)(1)(a), which provides: "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on the facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [or] the child's residential parent, *** and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree *** unless a modification is in the best interest of the child and one of the following applies:

**{¶ 28}** "(i) The residential parent agrees to a change in the residential parent ***

**{¶ 29}** "(ii) The child, with the consent of the residential parent *** has been integrated into the family of the person seeking to become the residential parent.

**{¶ 30}** "(iii) The harm likely to be caused by a change in environment is outweighed by the advantages of the change of environment to the child."

**{¶ 31}** A change of circumstances must be found before a trial court can determine the best interest of the child in considering a change of custody. R.C. 3109.04; *Bell v. Bell*, Clark App. No. 2007 CA 9, 2007-Ohio-6347, ¶26. There must be a change of circumstances to warrant a change of custody, and the change must be a change of substance, not a slight or inconsequential change. *Bell*, supra, citing *Travis v. Travis,* Clark App. No. 2006 CA 39, 2007-Ohio-4077, and *Davis v. Flickinger*, 77 Ohio St.3d 415, 417, 1997-Ohio-260.

**{¶ 32}** In determining whether a "change" has occurred, we are mindful that custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial court must have a wide latitude in considering all the evidence before it. *Davis*, 77 Ohio St.3d at 417.

**{¶ 33}** The son's behavioral problems were not new, and Botelho presented evidence from school officials and others that she was very proactive in dealing with these problems. She was active in the school, communicated closely and regularly with the teachers, and obtained extra help for the son from tutors and coaches. Klein, on the other hand, had not been closely involved with the children's school or activities and did not cooperate with Botelho's efforts to address the son's behavioral problems and poor grades. The court-appointed psychologist reported that it was "quite likely that Mr. Klein has encouraged [the son] in ways which have promoted his negative and angry behaviors;" he also observed that Klein had immature aspects to his personality and had "mixed results" in

dealing with the children. The guardian ad litem had expressed similar concerns about Klein's role in the son's bad behavior in the past, and he recounted Botelho's ongoing frustration that Klein did not support her efforts to deal with their son. The son expressed anger about the structure and rules at his mother's house and craved the freedom that his father allowed. Under these circumstances, the trial court did not abuse its discretion in concluding that the son's bad behavior, poor grades, and resentment of his mother's discipline did not constitute a change of circumstances warranting a change in custody.

{¶ 34} Klein argued and testified that his daughter was beginning to exhibit the same behavioral problems as his son and should be removed from Botelho's home before the problems became more serious. There is no evidence in the record, apart from Klein's own testimony, to corroborate this assertion and much evidence to refute it, and we would be very hesitant to endorse a prophylactic change of custody on such allegations. Thus, the trial court did not abuse its discretion in concluding that the daughter's behavior did not constitute a change of circumstances.

{¶ 35} Klein also contends that the parties' numerous disputes over parenting time warranted a change of custody, because he would better facilitate parenting time. Klein testified that Botelho had denied him visitation on several occasions when he was in Dayton; he also claimed that his work provided unique opportunities to travel the world, but Botelho interfered with his vacation and travel plans with the children. Botelho testified that the visits to which she had objected had been unscheduled, were beyond the scope of the parties' visitation order, and conflicted with the children's activities, and that the travel to which she had objected would have caused the children to miss too much

school.

**{¶ 36}** At the hearing, the parties offered conflicting evidence about the visitation problems and proposed travel. However, it appears the court correctly found that Botelho did not interfere with scheduled visitation; rather, she sometimes did not accommodate extra visits to the extent that Klein would have liked. The magistrate found it "not surprising" that the parties "would have difficulty in agreeing on additional parenting time." The trial court agreed with Botelho that some of the travel proposed by Klein would have necessitated unreasonable absences from school. Additionally, as will be discussed further under the twelfth assignment of error, Klein returned the children one month late from a trip to Brazil on one occasion after reporting a problem with the children's travel documents. The magistrate found Klein's testimony about the alleged problems with returning the children to "be lacking in credibility."

**{¶ 37}** Based on this evidence, the trial court did not abuse its discretion in concluding that Klein's claims about problems with parenting time did not warrant a change of custody.

**{¶ 38}** Finally, Klein cited the wishes of the children – particularly his son – as a basis to change custody. The daughter expressed ambivalence about where she should live and a desire to live with both parents; thus her wishes did not constitute a change of circumstances. The son, on the other hand, had expressed a strong desire to live with his father for several years, so this viewpoint was not new. Based on the son's testimony and the evaluations of the psychologist and guardian ad litem, it appears that the son's desire to live with his father was based on a "funner" (the son's expression) environment and lack of

discipline in his father's home, which would not necessarily be the best environment for addressing his behavioral issues. The psychologist also opined that a change of custody would reward the son's negative behaviors while living with his mother.

{¶ 39} Again, even assuming the agreed entry did not resolve this issue, the trial court did not abuse its discretion in concluding that the son's wishes did not constitute a change of circumstances that supported a change in custody.

{¶ 40} The second assignment of error is overruled.

V

{¶ 41} Klein's third assignment of error states:

{¶ 42} "THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING THE GUARDIAN AD LITEM AND THE APPELLEE TO INTRODUCE EVIDENCE FROM PRIOR TO MAY 12, 2006, EVEN THOUGH IT WAS STIPULATED TO THE COURT SUCH EVIDENCE WAS INADMISSIBLE."

{¶ 43} Klein contends that the parties "stipulated to the court" that no evidence would be considered that predated the magistrate's May 12, 2006 hearing on an earlier motion for change of custody. He objects to the following statement in the guardian ad litem's report, which he characterizes as "old evidence": "Historically, the father has sent the child [the son] correspondence advising him to act-out until he got his way and was permitted to live with the father." Klein points out that no evidence was offered of such emails or letters having been written since the prior hearing. Botelho denies that such a stipulation was made and contends that, in any event, the magistrate did not rely on the disputed statement.

{¶ 44} Klein objected to the guardian ad litem's report, rather than any particular finding of the magistrate related to that report. Indeed, the magistrate's decision did not expressly rely on the guardian ad litem's comment about the history of the case or on any actions that predated the prior hearing.[3] When the trial court reviewed Klein's objection to the guardian ad litem's report, it simply concluded that this objection related to the custody determination, which had been settled by the agreed entry.

{¶ 45} We note that the record does not support Klein's claim that the parties stipulated that the court would not consider anything that happened within the family prior to May 12, 2006; we have found no such stipulation in the record, and Klein has not directed us to such a stipulation.

{¶ 46} The guardian ad litem's brief reference to ways in which Klein may have undermined Botelho's relationship with the son may have relied, at least in part, on correspondence that predated the May 2006 hearing, but it appears that Klein's influence over the son's behavior continued to be an issue within the family. For example, in 2007, the son ran away from Botelho's home shortly after a lengthy telephone conversation with Klein. Botelho also alleged to the guardian ad litem that, in speaking with the children, Klein disparaged her and the school she had chosen for the children. The guardian ad litem cited examples of Botelho's efforts to deal with the son's behavior and noted that Klein could be much more supportive of Botelho in addressing the son's problems. Thus, the guardian ad litem's report and testimony do not support Klein's assertion that he (the

---

[3]The guardian ad litem's report does list "emails" among the documents reviewed in preparing the report, but there is no further indication in the report of the dates or content of these emails.

guardian ad litem) solely relied on "old evidence" in discussing the dynamics within the family. The guardian ad litem's report also makes clear that the particular concern regarding correspondence was a "historical" one, and the magistrate's decision contains no indication that the magistrate relied on this particular statement in the guardian ad litem's report.

{¶ 47} Even assuming that the parties' agreed entry, which transferred custody of the son to Klein, did not render this argument moot, the record does not support Klein's claim that the parties had entered into a stipulation to exclude certain evidence, that the trial court relied on such evidence, or that he was prejudiced by it. Thus, the assignment of error is overruled.

VI

{¶ 48} Klein's fourth assignment of error states:

{¶ 49} "THE TRIAL COURT'S DECISION THAT THE APPELLANT DID NOT ACTIVELY PARTICIPATE IN THE CHILDREN'S LIVES OR TAKE THE CHILDREN TO THE GUARDIAN AD LITEM WAS AN ABUSE OF DISCRETION BECAUSE APPELLEE HINDERED AND PROHIBITED SUCH INVOLVEMENT."

{¶ 50} Klein claims that the judgment of the trial court should be reversed and custody of the daughter transferred to him because the magistrate erred in concluding that he did not actively participate in the children's lives or take them to meet with the guardian ad litem. The trial court did not address Klein's objection to this finding because of the agreed entry related to custody of the children.

{¶ 51} Klein's argument mischaracterizes the magistrate's conclusion about his

involvement with the children. In finding no change of circumstances, the magistrate found that Klein was "no more involved in the minor children's school and extracurricular activities now than he was at the time of the prior custody determination." In concluding that the children's best interest would be served by remaining with Botelho, the magistrate noted that "[a]ll of the children's teachers indicated that [Botelho] is very involved in the children's educational and extracurricular activities, even more so than the typical parent. Furthermore, all the teachers testified that [Klein] had virtually no contact with them and is essentially nonexistent in the children's academic and extracurricular activities" and that he had never "attempt[ed] to assist them in dealing with [the son's] behavioral and academic issues."

**{¶ 52}** Klein admitted at the hearing that he had never attended one of his son's soccer games. He claimed to have contacted the children's school via email, although he did not provide any documentation of this fact, and the teachers denied it. Klein claimed that Botelho put "great obstacles" in the way of his involvement with the children's activities and refused to assist him in obtaining records from the school. Botelho denied that she had interfered in any way with Klein's ability to participate or obtain records from the school, although she acknowledged that she had refused to obtain information for him.

**{¶ 53}** The magistrate concluded that, although Klein had a close relationship with the children, he was not actively involved with their activities or their education and that, based on the evidence presented, Klein's lack of involvement was not attributable to Botelho's interference. The trial court did not err in finding similarly.

**{¶ 54}** The fourth assignment of error is overruled.

VII

{¶ 55} Klein's fifth and seventh assignments of error, which we will address together, state:

{¶ 56} "THE TRIAL COURT SHOWED A BIAS AND A PREJUDICE AGAINST APPELLANT WHEN IT FOUND HIM TO BE LESS THAN TRUTHFUL AND WAS SILENT ON APPELLEE'S EVASIVENESS AND MISTRUTHS."

{¶ 57} "THE TRIAL COURT'S FINDINGS REGARDING APPELLANT'S TRUTH AND VERACITY SHOW AN UNDUE PREJUDICE AGAINST HIM THAT WAS NOT DEMONSTRATED TOWARDS APPELLEE."

{¶ 58} Klein contends that Botelho was "evasive" and "argumentative" and provided answers that "were indisputably contrary to the evidence," while he testified truthfully. He claims that the trial court's finding that he was "less than truthful" should be reversed.

{¶ 59} As we discussed above, the credibility of witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *DeHass*, 10 Ohio St.2d at 231.

{¶ 60} The magistrate stated that Klein was "less than truthful" with respect to his income. Evidence was presented that, in addition to Klein's income as a professor of music at Oberlin College, he received free housing from the college and was paid to perform at music festivals and concerts around the world. Klein admitted that he had performed 18 to 20 concerts or more between May 2006 and January 2008, but claimed that he had only received minimal stipends or had his expenses paid for those events. But

Botelho claimed that, in the past, Klein had earned up to $25,000 for such engagements. The magistrate found Botelho's testimony to be credible on this subject. The magistrate also stated that Klein seemed to have supplemental income, because he could afford to take a leave of absence from Oberlin to await the birth in Brazil of a child with his second wife. Neither the magistrate nor the court erred in weighing this testimony as it did.

{¶ 61} Klein argues, more generally, that his testimony was truthful while Botelho's was not, and that the magistrate abused his discretion in implicitly crediting Botelho's testimony in its rulings. However, a significant amount of Klein's testimony involved uncorroborated claims about what Botelho had said or done, and his testimony was contradicted by testimony from third parties, such as the guardian ad litem, the psychologist, and the children's teachers, as well as by Botelho.

{¶ 62} The magistrate was free to decide whether, and to what extent, to credit the contradictory testimony offered in the case. As the trial court noted in overruling Klein's objection, "the fact that certain testimony of [Klein] struck [the magistrate] as untruthful does not need to be compared specifically to testimony of any other witness." In other words, the magistrate did not need to provide specific reasons for crediting Botelho's testimony rather than Klein's, and the trial court could have reasonably reached the same conclusion with respect to the credibility of the witnesses. The trial court did not lose its way in resolving the issues as it did, and we will not reverse its decision on appeal. Moreover, because neither the magistrate nor the trial court was required to expressly comment on the truthfulness of any particular witness or testimony, we will not construe the failure to do so as bias or prejudice.

{¶ 63} The fifth and seventh assignments of error are overruled.

VIII

{¶ 64} Klein's sixth assignment of error states:

{¶ 65} "THE TRIAL COURT ABUSED ITS DISCRETION AND PREJUDICED APPELLANT WHEN IT FAILED TO HEAR ADDITIONAL EVIDENCE CONCERNING THE MINOR CHILD'S [(THE SON'S)] REMOVAL FROM SCHOOL."

{¶ 66} Klein claims that he was "significantly prejudiced" by the magistrate's refusal to hear additional evidence about his son's problems in school, which resulted in his removal from a private school and his enrollment in public school after the last day of the hearing.

{¶ 67} The hearing before the magistrate occurred on nine days over a ten-month period, in addition to a day on which the children were interviewed. During this time, Klein presented substantial evidence, consisting primarily of his own, uncorroborated testimony, that Botelho was a poor parent who was unequipped to deal with their son's significant behavioral problems. Botelho, the court-appointed psychologist, the guardian ad litem, and the children's teachers provided a great deal of evidence contradicting Klein's view. In any event, the son's behavioral problems had been thoroughly addressed, and the trial court reasonably concluded that additional testimony "would not be an efficient use of the court's time nor beneficial to the parties."

{¶ 68} The sixth assignment of error is overruled.

IX

{¶ 69} Klein's eighth and ninth assignments of error state:

**{¶ 70}** "THE TRIAL COURT'S FINDING OF CONTEMPT WAS ARBITRARY, UNREASONABLE, AND UNCONSCIONABLE BECAUSE APPELLANT CLEARLY SHOWED IT WOULD HAVE BEEN IMPOSSIBLE FOR HIM TO COMPLY BASED ON HIS INCOME AND HE MADE THE PAYMENTS HE COULD BASED ON HIS INCOME."

**{¶ 71}** "THE TRIAL COURT WAS IN ERROR IN ORDERING APPELLANT TO PAY ATTORNEY FEES WITH THE CONTEMPT WHEN IT WAS IMPOSSIBLE FOR HIM TO COMPLY AND HE PAID HIS SUPPORT OBLIGATIONS WHEN IT WAS POSSIBLE."

**{¶ 72}** Klein asserts that the trial court erred in not reducing his child and spousal support payments and in finding him in contempt for not making the previously-ordered payments, when his income had been reduced because of a disability and he was unable to pay. He claims that the trial court also erred in failing to "make a finding that [he] was physically challenged by disease." Furthermore, he claims that the trial court erred in calculating his arrearage and in ordering him to pay Botelho's attorney fees related to the contempt proceeding ($1,000).

**{¶ 73}** Klein's argument and the magistrate's finding of contempt relate to the magistrate's finding that Klein had substantial income from performances, in addition to his salary from Oberlin, from which he could have made support payments, but did not. We discussed above the reasonableness of the magistrate's conclusion that Klein had substantial income beyond his teaching salary. Based on the conclusion that Klein had additional income and had not contributed any of that income toward his support

obligation, the magistrate found that Klein had "not made a good faith effort to honor his child and spousal support obligations" and was in contempt. Because the evidence suggested a reasonable conclusion that Klein had additional income, the trial court did not abuse its discretion in overruling Klein's objection or finding him in contempt for failing to meet his support obligations.

{¶ 74} Klein also contends that the trial court abused its discretion in failing to reduce his support obligations. This argument again turns on the credibility of Klein's claims about his income, which the magistrate found to be "less than truthful." The magistrate concluded that he was "unable to accurately determine [Klein's] income for purposes of calculating support" because of Klein's failure to provide credible evidence about the incomed earned through performances and the value of the housing provided by his employer. The magistrate did not abuse its discretion in this regard. In addition to finding that the magistrate's conclusion was supported by the record and implicitly agreeing with it, the trial court noted that it could not have changed, modified, or suspended the support payments "retroactively based on [Klein's] historical representation *** even if the magistrate had found that there were some periods of unemployment ***."

{¶ 75} With respect to the arrearage, Klein claims that the trial court erred in relying on Botelho's evidence because Botelho's calculations failed to "take into account any payments recorded or paid through the Montgomery County CSEA." At the hearing, however, Botelho acknowledged that her figures about the arrearage did not include payments made through Montgomery County. The magistrate found that the arrearage was $117,587 as of January 2008, but credited Klein for $26,492.07 paid through the

Montgomery County Child Support Enforcement Agency in 2007. Klein does not dispute these figures. Because the record demonstrates that the Child Support Enforcement Agency payments made through Montgomery County were taken into account, and because the trial court correctly found that Klein "did not offer any testimony contrary to" Botelho's as to the amount of the arrearage, the trial court did not abuse its discretion in using the magistrate's calculation.

{¶ 76} Finally, Klein contends that the magistrate erred in ordering him to pay $1,000 in attorney fees to Botelho, based on the finding of contempt. The trial court overruled Klein's objection to this award without any additional comment.

{¶ 77} The trial court acts within its discretion in awarding attorney fees to the movant upon a finding of contempt. *Schaefer v. Schaefer*, Greene App. No. 2004 CA 65, 2005-Ohio-3063, ¶30-31; *Hash (Krumm) v. Hash* (May 1, 1998), Montgomery App. No. 16855. Here, Botelho filed multiple motions to show cause, and a significant amount of her attorney's time and effort in preparation for and at the hearing was focused on discrediting Klein's claims with respect to his income, particularly his claims that he received only nominal pay for performances and had been unable to pay support. The trial court did not abuse its discretion in awarding $1,000 in attorney fees.

{¶ 78} The eighth and ninth assignments of error are overruled.

X

{¶ 79} Klein's tenth assignment of error states:

{¶ 80} "THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING A CHILD SUPPORT ARREARAGE AND THE PROPERTY SETTLEMENT BECAUSE

THOSE ISSUES WERE BARRED BY RES JUDICATA."

{¶ 81} Klein contends that the trial court abused its discretion in relying on evidence  that predated the court's May 2006 hearing in calculating the child support arrearage.  He claims that, after the May 2006 hearing, the court found "insufficient evidence to find any arrearage in child support" (Klein's characterization), and he points out that Botelho did not appeal from that judgment.  Klein asserts that Botelho's attempts to collect child support for any period predating the May 2006 hearing and to enforce the property settlement after that time were barred by res judicata.

{¶ 82} The May 2006 hearing related, in pertinent part, to a motion by Klein to modify his child support and spousal support obligations and a motion by Botelho to hold Klein in contempt for failure to pay child support.  In his decision, the magistrate found that Klein had "failed to present sufficient evidence documenting his income," that the documents he presented were "self-serving," and that he had provided "none of the corresponding documentation to back up this information."  Because of these shortcomings in the evidence, the magistrate was "unable to arrive at an income figure that would allow a child support computation worksheet to be completed."  The magistrate also concluded that, although Botelho had testified that she believed the child support arrearage was $49,476, she did not have documentation from the Illinois Support Enforcement Agency to substantiate what payments Klein had made, if any.

{¶ 83} Finally, although the parties had presented evidence that Klein had sold a viola and the proceeds had been applied to his arrearage, the magistrate observed that the court "was provided with no specific evidence as to what transpired with the proceeds from

the sale." Based on the record before him, the magistrate denied Klein's motion to reduce his support obligation and denied Botelho's motion to find Klein in contempt. Klein objected to the magistrate's decision, but the trial court overruled the objection; Botelho did not object.

**{¶ 84}** In its May 2009 decision, the magistrate found that, including the arrearage accrued under the Illinois decree, Klein owed $117,587 as of January 2008. The magistrate also found that Klein should be credited for $26,492.07 paid through the Montgomery County Child Support Enforcement Agency in 2007. Thus, the court determined that Klein's support arrearage was $91,094.93 as of January 1, 2008. It added to that amount $23,025.78 that was owed under the property settlement.[4]

**{¶ 85}** When Klein objected to the magistrate's consideration of any arrearage that predated the prior hearing, the trial court stated: "[I]n 2006 the court found there was insufficient evidence to find any arrearage in the child support that had been previously ordered in Illinois. This does not mean there was no arrearage, only that there were no records to set an arrearage at that time." (Emphasis in orignal.) The court overruled Klein's objection. The trial court rejected Klein's argument that the prior determination that there had been insufficient evidence to determine the amount of child support arrearage barred any future attempt by Botelho to collect the entire arrearage. The trial court also rejected, without additional discussion, Klein's objection to the magistrate's inclusion of the unpaid property settlement in the arrearage, on grounds of res judicata. Klein did not

---

[4] The trial court also added $2,640.50 as Klein's share of the cost of the children's extracurricular activities, which will be discussed under the eleventh assignment of error.

argue that the funds had already been paid.

{¶ 86} As a general matter, the doctrine of res judicata may be applied when a party seeks to revisit an issue regarding a support arrearage that was previously considered and decided by the court. *In re Kelley* (December 15, 2000), Champaign App. No. 2000-CA-14, citing *Fletcher v. Fletcher* (June 23, 1993), Greene App. No. 91-CA-107, and *Cox v. Cox* (1998), 130 Ohio App.3d 609, 616. In this case, however, the trial court correctly concluded that the arrearage question had not been resolved or "decided" in the prior decision so as to bar future claims. As the trial court stated, it did not find "no arrearage [in the prior judgment], only that there were no records to set an arrearage at that time." (Emphasis in original.) The parties also had not presented evidence from which the magistrate or trial court could determine what payments had been made toward the property settlement. Under these circumstances, the trial court did not err in concluding that Botelho's claim for arrearages was not barred by res judicata.

{¶ 87} The tenth assignment of error is overruled.

XI

{¶ 88} Klein's eleventh assignment of error states:

{¶ 89} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND APPELLANT RESPONSIBLE FOR PAYMENT OF EXTRACURRICULAR FEES WHEN APPELLEE BLATANTLY FAILED TO FOLLOW THE FINAL DECREE."

{¶ 90} Klein asserts that the trial court erred in ordering him to reimburse Botelho in the amount of $2,640.50 for extracurricular expenses incurred on behalf of the children and in adding this amount to the arrearage. He claims that Botelho was not entitled to

collect from him for these activities because she had not consulted with him in the selection of the activities, as required by their decree of dissolution, and because the children had, in some cases, missed appointments and lessons. He also claims that Botelho failed to substantiate the costs associated with these activities.

{¶ 91} The parties' settlement agreement required that Klein pay two -thirds and Botelho pay one-third of the cost of the children's extracurricular activities and lessons. The parties acknowledged in the agreement "that children's activities include[d] music lessons, karate, scouts, and swimming lessons and summer day camp," and these are the types of activities in which the children were enrolled.

{¶ 92} At the hearing, Klein readily admitted to the court that he chose never to communicate with Botelho directly; he used his new wife as an intermediary. Thus, he erected an obstacle to meaningful consultation with Botelho about the children's activities, as anticipated by the settlement agreement. Klein also admitted that he did not attend or otherwise participate in the children's activities and was often out of the country. There is no suggestion in the record that the activities in which the children participated were inappropriate for their ages and interests. Under these circumstances, the court reasonably concluded that Klein should be required to pay for his share of the children's extracurricular activities, even if he had not been consulted in the selection of those activities; the trial court did not abuse its discretion in overruling Klein's objection.

{¶ 93} Klein also claims that Botelho did not substantiate the amounts that were owed for the children's activities. However, Botelho presented and testified about an exhibit which listed the dates, activities, and costs of the children's activities; the

magistrate's award was based on this evidence. Although, on cross-examination, it became apparent that some of the attached checks did not correspond with the payments listed, the magistrate did not abuse its discretion in concluding that Botelho had sufficiently documented her claim. Similarly, although the children may have missed some appointments or lessons due to visitation conflicts, illness, or for other reasons, the court could have reasonably concluded that such absences did not justify Klein's non-payment.

{¶ 94} The eleventh assignment of error is overruled.

XII

{¶ 95} Klein's twelfth assignment of error states:

{¶ 96} "THE TRIAL COURT ABUSED ITS DISCRETION [BY] FINDING THE APPELLANT IN CONTEMPT FOR HIS FAILURE TO RETURN THE CHILDREN TIMELY WHEN HE SHOWED THROUGH EXHIBITS AND TESTIMONY THAT HE WAS NOT AT FAULT."

{¶ 97} Klein was found in contempt for failure to return the children from a visit to Brazil as scheduled on July 27, 2008. The children remained in Brazil for several more weeks. Klein claimed that problems with the children's paperwork (allegedly caused by Botelho) had caused the initial problem with their return, and that his busy schedule had contributed to the length of the delay because, by prior court order, the children had to be accompanied on their return flight.

{¶ 98} The parties presented conflicting evidence about whether there was a legitimate problem with the children's paperwork, when Botelho was notified of the problem, and the effect of the alleged problem. After considering this evidence, the

magistrate reached the following conclusion:

{¶ 99} "[Klein] *** testified that on July 26, 2008, he and the children arrived at the airport to return to the United States but were advised by police officials that the minor children would not be allowed to depart as a result of not having the affidavit of international travel. However, [Klein] acknowledged that he arrived at the airport nine hours prior to his scheduled flight time and never went to the Delta Airlines desk to discuss the situation. In fact, [Klein] and the minor children left before the Delta Airlines desk opened, and the airline indicated they were no shows for their scheduled flight.

{¶ 100} "[Botelho testified that Klein did not notify her of any problem with the children's travel documents until after they missed the July 26 flight.] [Botelho] testified that she immediately drove to the Brazilian consulate in Chicago, executed the appropriate documents, and transferred the documents to [Klein]. [Klein] acknowledges the receipt of the paperwork in late July 2008 but acknowledges the children did not leave Brazil for approximately another month.

{¶ 101} "[Klein] testified that it was his plan to fly the children back to the United States on July 26 then immediately fly back to Brazil to begin work on his new project as an artistic director. *** [Klein] initially indicated that the children could not be returned to the United States because there were no available seats for [him] and the minor children on a flight. However, [Klein] later stated that the reason the children were unable to return to the United States is that the children were unable to fly unaccompanied as a result of [Botelho's] wishes. Additionally, [Klein] stated that he was unable to return the children sooner given the many activities that he had planned as artistic director, etc. for the next

thirty days.

{¶ 102} "This magistrate finds [Klein]'s testimony to be lacking in credibility. This magistrate finds it incredulous that [Klein] showed up at the airport nine hours prior to the departure of the scheduled flight and was advised at that time that the children would not be able to leave Brazil. It would appear that [Klein] purposely sought out a law enforcement official to be advised that the children could not leave Brazil. Additionally, this magistrate finds it highly unlikely that the children could not otherwise be returned within thirty days.***"

{¶ 103} Although Klein contends that the evidence clearly showed that he was not at fault in the children's late return, the record did contain evidence from which the magistrate and the court could have reasonably concluded that Klein had willfully failed to return the children on or near the expected date of their return. Thus, the magistrate did not abuse its discretion in finding Klein in contempt, and the trial court did not err in overruling his objection to this finding.

{¶ 104} The twelfth assignment of error is overruled.

XIII

{¶ 105} Klein's thirteenth assignment of error states:

{¶ 106} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO GIVE CREDIT TO APPELLANT FOR THE GUARDIAN AD LITEM FEES BECAUSE APPELLEE WAS SPECIFICALLY RESPONSIBLE FOR THE FEE."

{¶ 107} Klein claims that the trial court failed to "give [him] credit for the $650 which he paid to the [guardian ad litem] for making the trip to Oberlin to view his home

and facilities for the children." The trial court overruled this argument without addressing it directly, on the ground that issues related to the guardian ad litem were "irrelevant" in light of the parties' subsequent agreement on custody.

{¶ 108} A pre-hearing order filed by the magistrate on October 24, 2007, appointed a psychologist "to assist in the determination of parental rights" and a guardian ad litem. Klein was ordered to pay for the psychologist, and Botelho was ordered to pay for the guardian ad litem, but both of these payment orders were "subject to reallocation." The order made no reference to *where* the meeting with these professionals would take place, and it did not expressly contemplate travel by either of the professionals.

{¶ 109} In December 2007, the guardian ad litem filed a motion for extraordinary fees on the basis that a home study of Klein's residence was required for the guardian ad litem to perform his duties, which would require travel to Oberlin. The guardian ad litem requested "an additional $650 in fees to the father." The trial court sustained the motion and ordered Klein to pay the guardian ad litem $650. Klein did not object to this order.

{¶ 110} Klein's argument suggests that the court intended for Botelho to pay all fees related to the guardian ad litem, but the record expressly refutes this claim and, to the extent there was any question about the court's intent, Klein did not seek clarification. The magistrate did not err in failing to credit Klein for the $650 he paid to the guardian ad litem.

{¶ 111} The thirteenth assignment of error is overruled.

XIV

{¶ 112} The judgment of the trial court will be affirmed.

. . . . . . . . . .

GRADY, P.J. and DONOVAN, J., concur.

Copies mailed to:

James R. Kirkland
Kenneth J. Krochmal
Hon. Timothy D. Wood